CONSTANCE K. SAWICKI, AN INFANT, BY HER NEXT FRIEND, JOSEPH SAWICKI, PLAINTIFF, v. STEPHEN SLAHOR, DEFENDANT.

UNION COUNTY CIRCUIT COURT.

Decided July 21, 1933.

For the rule, *Joseph B. Sugrue.*

*Contra, Julius H. Halprin.*

JAYNE, C. C. J.  The complaint in this action alleges that on or about December 1st, 1930, both the plaintiff and the defendant were unmarried, and that on or about that date, the defendant, with intent to deceive the plaintiff, falsely and fraudulently promised and agreed to marry the plaintiff, and thereby induced the plaintiff to promise and agree to marry him and to have sexual intercourse with him; that the plaintiff thereafter became pregnant and ultimately gave birth to a child, and the defendant has refused to marry the plaintiff, all to the damage and injury of the plaintiff.  More succinctly stated, the complaint alleges a mutual promise of marriage between the parties procured by the fraud of the defendant, the seduction of the plaintiff by means of the false promise of marriage and the refusal of the defendant to marry the plaintiff.

This action was regarded at the trial, and properly so, as an action *ex contractu* and not *ex delicto*. To this complaint, an answer was filed in behalf of the defendant in which the allegations of the complaint are generally denied and in which the infancy of the defendant is asserted as an additional defense.

The trial resulted in a verdict in favor of the plaintiff in which she was awarded $7,500 damages. The defendant has a rule to show cause why this verdict should not be set aside, pursuant to which it is argued in behalf of the defendant that the verdict is contrary to law and to the weight of the evidence, and that the damages so allowed are excessive.

It must be assumed that the jury concluded from a consideration of the testimony that an agreement was in fact entered into between the plaintiff and the defendant arising out of their mutual promise to marry and that the defendant, without justifiable cause, demonstrated his unequivocal intention not to perform the agreement to marry. To this extent, the conclusion of the jury cannot be said to be so manifestly contrary to the weight of the evidence as to justify its disturbance. To argue to the contrary would be but a mere banquet of words. In the witness chair, the denials of the defendant were obviously artificial. The real pressure of the argument now made for the defendant is applied more particularly to the contention that the uncontroverted testimony disclosed that the defendant was an infant at the time of the alleged promise to marry the plaintiff, and that accordingly his plea of infancy should have liberated him from all liability to the plaintiff for the breach of any such promise. It may well be that the infancy of the promisor at the time of the making of the promise to marry may be available, subject to recognized exceptions, as a defense in an action against the infant for a breach of promise to marry. *Corbin* v. *Gomes*, 142 *Atl. Rep.* (*R. I.*) 328; 9 *C. J.* 323; 57 *L. R. A.* 684. The privilege of infancy will not enable an infant to escape liability on his contractual obligations in all cases and under all circumstances. The classification of such contracts and the lines of distinction separating the enforceable from

the unenforceable are readily harvested from the books. It is sufficient here to say that a youth of sufficient age and capacity to fully comprehend the nature, significance and probable consequences of his contractual undertaking, who has procured the making of such agreement by fraud, acquired the benefits thereof and retained them, may encounter, even in a court of law, the doctrine of estoppel in his effort to escape liability. *LaRosa* v. *Nichols,* 92 *N. J. L.* 375; 105 *Atl. Rep.* 201. In the instant case, the defendant was nineteen years of age at the time of his alleged promise to marry the plaintiff. The plaintiff was seventeen years of age. Testimony was adduced evidencing those associations between the plaintiff and the defendant which customarily forecast a future intermarriage. The romance began in the summer of 1930 and definitely terminated in February, 1931. The story in this case which the jury was justified in accepting as true is that in the fall of 1930, the defendant began to assure the plaintiff of his love and affection for her and of his desire to marry her. His attentions became more affectionate and he enlarged his claim upon her society to the exclusion of other possible suitors. On the night of December 5th, 1930, the parties motored to some suburban place of seclusion, where the defendant is said to have more vehemently protested his love for the plaintiff and to have assured her that he was "old enough and strong enough to take care of her; that he had already accumulated $300 and that he would marry her." With such assurances of future wedlock, the plaintiff yielded to his embraces. Her surrender was obviously not unconditional. She relied upon the terms. At the moment, no oath could have been holier to her than his.

The defendant continued to "keep company" with the plaintiff until the mother of the plaintiff, in a somewhat volcanic manner, imparted to him the knowledge of the pregnancy of the plaintiff. His adventure had resulted disastrously. He terminated his associations with the plaintiff at once. He declined to financially assist the plaintiff in defraying the expense of her prospective confinement because he had no money. His story about the $300 was fic-

tion.   He informed the plaintiff herself that he had never intended to marry her.   It will thus be observed that there was testimony from which the jury might reasonably and legitimately infer that the defendant had promised to marry the plaintiff with no then present intention to do so; that he seduced her by means of this false promise, and that he has persistently refused to perform his promise.   Such conduct on his part was fraudulent.   *Perry* v. *Orr,* 35 *N. J. L.* 295;   *Polhemus* v. *Melides,* 96 *Id.* 105;   113 *Atl. Rep.* 593. The law, therefore, must be applied to the facts deemed to be established by the testimony.   Incidentally, it is the existence of different facts in the many cases that prevents the adoption of a fixed and uniform rule.   Assuming the facts to be as hereinbefore related, the privilege of infancy would assume more of the appearance of a sword than of a shield.   Restoration is impossible.   The question of fraud on the part of the defendant was specifically submitted to the jury under instructions most liberal to the defendant.   The solution of this question by the jury, unfavorably to the defendant, is abundantly supported by the testimony.   The defendant accomplished his desired purpose to the irreparable injury of the plaintiff by virtue of an agreement, the making of which he knowingly procured by his own willful fraud.   In the circumstances of this case, he was' estopped from successfully availing himself of the privilege of infancy.   The verdict is therefore neither contrary to law in the respect claimed nor contrary to the weight of the evidence.

Moreover, it is argued that the damages awarded to the plaintiff by the jury are excessive.   In actions for breach of promise to marry, the award of damages cannot be judged by the application of the rules that ordinarily govern the allowance of damages in contract cases.   The award in a breach of promise case such as this may embrace compensation to the plaintiff for the injury to her affections, reputation, future prospects of marriage, for her altered social condition, her shame, mortification, mental distress and suffering.   In the instant case, the jury was made aware of the seduction of the plaintiff.   *Coil* v. *Wallace,* 24 *N. J. L.* 291.   Verdicts as high

as $20,000 in such cases have not been regarded as excessive. *Campbell* v. *Fitzsimmons,* 4 *N. J. Mis. R.* 937; 134 *Atl. Rep.* 898. The moderate social and financial standing of the parties to this action is emphasized as a reason for the reduction of the damages. The allowance of $7,500 may be generous, having regard to the circumstances of the parties and their social positions, but the award is not so large as to justify the interference of the court.

The rule to show cause must accordingly be discharged.