In the Matter of the Estate of SUTHERLAND G. TAYLOR, an Infant.

Surrogate's Court, Westchester County, December 5, 1934.

*Strang & Taylor*, for the petitioners.

*Charles Everett Moore*, for the guardian of the property of the infant.

SLATER, S. The guardians of the person of this infant have applied to the court for an order (1) authorizing the guardian of the property to reimburse the petitioners for expenditures made by them for the support, maintenance and education of said infant for the period commencing November 10, 1924, to August 1, 1934, inclusive, amounting to $16,784.09; (2) authorizing the guardian of the property to pay certain bills incurred but not yet paid for the support, maintenance and education of the infant, amounting to $3,775.51; (3) authorizing the guardian of the property to pay to the Hun School, Princeton, N. J., the sum of $346.99 for the tuition of the infant, and (4) fixing the allowance to be paid by the

guardian of the property to the petitioners for the support, maintenance and education of said infant for the year commencing August 1, 1934. The infant, now eighteen years of age, has approved of the expenditures and consented to this application. The guardian of the property has filed an answer, in which the claim is made that the court is without jurisdiction or power to allow reimbursement for the maintenance and education of the infant of such items as were not expended within six years before the making of such order; in other words, that the Statute of Limitations applies.

The infant was born on November 26, 1916. The father and mother died in 1924. The petitioners are the uncle and aunt of the infant. Upon the death of the mother of the infant, petitioners took him into their own home and have supported, maintained and educated him since that time.

On November 20, 1924, letters of guardianship of the *person* of the infant were issued to the petitioner and his wife. On March 25, 1931, upon the petition of the infant, letters of guardianship of his property were issued to the Westchester Title and Trust Company. On June 15, 1933, the Westchester Title and Trust Company filed an account of its proceedings as such guardian, together with a petition praying that its account be judicially settled and that it be permitted to resign. On June 15, 1934, a decree was made judicially settling the account of proceedings of said guardian, permitting it to resign, and appointing The County Trust Company of White Plains, N. Y., as guardian of the property of the infant.

There have been no previous applications made for an allowance for the support, maintenance and education of the infant out of his estate.

The Statute of Limitations does not run upon the account of a guardian against his ward while the relationship exists. (*Kimball* v. *Ives*, 17 Vt. 430; *Taylor* v. *Hill*, 86 Wis. 99; 56 N. W. 738; 28 C. J. 1217, 1255.) The general principle of law is that until the guardianship ceases or the trust is repudiated, limitations do not begin to run. (*Boughton* v. *Flint*, 74 N. Y. 476; *Reitz* v. *Reitz*, 80 id. 538; *Mabie* v. *Bailey*, 95 id. 206; *Matter of Camp*, 50 Hun, 388, and cases cited *supra*.)

The general rule of law is that an infant has not the capacity to bind himself absolutely by contracts, since any contract made by him during his infancy may be avoided. This rule yields to the exception that, where an infant's contract is to his benefit, it is good and binding upon him; when 't is to his prejudice, it is void; and when it is of an uncertain nature as to benefit or prejudice, it is voidable only at the election of the infant. (*Joseph* v. *Schatzkin*, 259 N. Y. 241; *Matter of Rahman* v. *Bethel*, 236 App. Div. 182;

*Sawicki* v. *Slahor*, 11 N. J. Misc. 604; 167 A. 691; *Wells* v. *Radville*, 112 Conn. 459; 153 A. 154; 31 C. J. 1060.)

At common law a male infant attains his majority when he becomes twenty-one years of age and all unexecuted contracts made by him before that date, *except for necessaries*, while not absolutely void, are voidable. (*International Text Book Co.* v. *Connelly*, 206 N. Y. 188.)

A complaint in an action against an infant for necessaries is sufficient if it contains allegations which, if alleged in a declaration of common law, would have stated a cause of action for debt for board and lodging or goods furnished. It is not necessary to allege in addition that the infant has no father or other person standing *in loco parentis*, who both could and should support him. (*Goodman* v. *Alexander*, 165 N. Y. 289.)

The mere fact that an infant has a father, mother or guardian does not prevent his being bound to pay for what was actually necessary for him when furnished, if neither his parents nor guardian did anything toward his care and support. A statute providing that no contract of any nature whatever, made by a person under guardianship, shall be valid in law has been held not to preclude a recovery for the reasonable value of necessaries furnished under contract.

The term " necessaries," as used in the law relating to the liability of infants therefor, is a relative term, somewhat flexible, except when applied to such things as are obviously requisite for the maintenance of existence, and depends on the social position and situation in life of the infant, as well as upon his own fortune and that of his parents. The particular infant must have an actual need for the articles furnished; not for mere ornament or pleasure. The articles must be useful and suitable, but they are not necessaries merely because useful or beneficial. Concerning the general character of the things furnished, to be necessaries the articles must supply the infant's personal needs, either those of his body, or those of his mind. However, the term " necessaries " is not confined to merely such things as are required for a bare subsistence. There is no positive rule by means of which it may be determined what are or what are not necessaries, for what may be considered necessary for one infant may not be necessary for another infant whose state is different as to rank, social position, fortune, health or other circumstances, the question being one to be determined from the particular facts and circumstances of each case. (31 C. J. 1077, 1078; *International Text Book Co.* v. *Connelly, supra.*)

Section 194 of the Surrogate's Court Act provides as follows: " Upon the petition of the guardian of an infant's person or prop-

erty; or of the infant; or of any relative or other person in his behalf; the surrogate, upon notice to such persons, if any, as he thinks proper to notify, may make an order, directing the application, by the guardian of the infant's property, to the support and education of the infant, of such sum as to the surrogate seems proper, out of the income of the infant's property; or, where the income is inadequate for that purpose out of the principal."

The surrogate, under his general equity powers (Surr. Ct. Act, § 40), has also the right to make an allowance for past maintenance. (*Hyland* v. *Baxter*, 98 N. Y. 610; 2 Jessup-Redf. [3d ed.] 2195.)

In *Voessing* v. *Voessing* (4 Redf. 360, a case in this court) Surrogate Silkman said: " It is proper, in considering the facts of this case, and the rules of law applicable thereto, to lay down a few well-established principles. It is, then, no part of the duty of a guardian, simply as such, to contribute to the support of the ward out of his own funds (*People* v. *Kearney*, 19 How. Pr. 493, 499); but it is the primary duty of a parent, whether father or mother, if of sufficient ability. Without regard to this duty, imposed by the law of nature, our statutes expressly recognize the obligation of the parent to prevent the child from becoming a public charge. If, however, the parent be also the guardian of a minor, having an estate of its own, then the circumstances of the parent, as well as the amount of the estate of the ward, may be taken into consideration in fixing the degree of, and determining whether there is any, liability of the former. (*Matter of Burke*, 4 Sandf. Ch. 617; *Matter of Kane*, 2 Barb. Ch. 375; *Wilkes* v. *Rogers*, 6 Johns. 566.) The same cases also establish the principle that an allowance may be made for past maintenance and support of a ward in a proper case. (See, also, *Matter of Bostwick*, 4 Johns. Ch. 100.) No inflexible rule can be established, but each case must be determined on the facts peculiar to it. The proper course to pursue, where the income is insufficient, is for the guardian to make application to the court for leave to use so much of the principal as may be necessary (Dayt. Surr. 689); but in case he proceed without such leave, the court may, if the proceeding seems to have been wise, and for the welfare of the ward, sanction it."

In *Matter of Boulware* (144 Misc. 235) this court said that " The doctrine has been adopted by the courts that persons acting *en autre droit* as executors, administrators, trustees, guardians, receivers, life tenants, etc., are to be indemnified out of trust property.

In the case of *Fearns* v. *Young* (10 Ves. Jr. 184), decided in 1804 by the Lord Chancellor of England, the question arose as to whether or not the trustee or *next friend* of the infant was entitled to allowances. It was held that " where a trustee in the fair execution of

his trust has expended money * * * he is entitled * * * to his charges and expenses * * *. With regard to an infant this requires great consideration; for, as the infant himself cannot incur *charges* and *expenses*, if they cannot be claimed under just allowances, and the next friend is to be at the whole expense of the infant beyond his costs, persons will deliberate, before they accept that office." (Italics are writer's.)

The same result is reached in the case of *Beardsley* v. *Hotchkiss* (96 N. Y. 201, 219) where the court said that " there is no doubt of the power of an equity court to make to a father a reasonable allowance for the past and future support of his minor children, out of their property, in his hands, or in the hands of their trustees." (*Matter of Lapides*, 144 Misc. 19.)

The papers on this application show that the estate of the infant in the hands of the guardian of his property consists of $48,500 principal, and income in the sum of $22,945.22, a total of $71,445.22, with credits of $423.30, leaving a balance of $5,382.34 in cash and $65,639.58 in stocks, bonds and mortgage certificates. The papers also show that, in addition, this infant has substantial interests in various other estates not yet distributed.

I hold that the court has power to pass upon this application; that the Statute of Limitations does not apply; and that the moneys expended and the bills incurred by these petitioners for the benefit of this infant were and are fair, just and reasonable and for the best interests of said infant. The objections are dismissed.

An order may be submitted on notice directing payment of the sum of $16,784.09 to the petitioners herein; the payment of the sum of $3,775.51 for bills incurred and not yet paid; and for the payment of the sum of $346.99 to the Hun School, Princeton, N. J., for tuition of said infant.

The order may also provide for an annual allowance for the support, maintenance and education of this infant upon the presentation of proper evidence showing the amount required and the necessity therefor.

Proceed accordingly.