**Larry GARDNER and East Tennessee Baptist Hospital, Intervenor, Appellant,**

v.

**Jacqueline FLOWERS and Bridgett Flowers, Minor, b/n/f Polly Flowers, Appellee.**

Supreme Court of Tennessee.

Nov. 10, 1975.

Wade M. Boswell, Knoxville, for appellant.

Ronald L. Billmyer and Charles Dungan, Maryville, for appellee.

OPINION

BROCK, Justice.

Jacqueline Flowers, a child now ten years of age, received severe injuries in an automobile accident on June 7, 1969. She lives with her mother, who receives a welfare grant to meet the family's needs. Jacqueline's father does not support her. At the time of the automobile accident, Jacqueline received medical treatment of her injuries from the East Tennessee Baptist Hospital for which it has rendered a bill in the sum of $7,353.69. A partial payment in the sum of $2,082.40 has been made on this bill by the Tennessee Department of Public Welfare. The balance of $5,271.29 remains unpaid. Jacqueline, by next friend, brought an action for damages against the person alleged to have negligently caused the automobile accident and her injuries which has resulted in a net settlement of $7,125.00 for her. These funds remain in the hands of the Circuit Court Clerk as trustee for Jacqueline. The East Tennessee Baptist Hospital has intervened in the damage suit in an effort to subject Jacqueline's funds in the hands of the clerk to the payment of the remainder of the hospital bill. The trial court heard the case upon a stipulation of the facts and determined the issue against the hospital and in favor of the minor. The hospital has appealed.

In general, an infant can avoid his contracts. *Western Union Telegraph Co. v.*

*Ausbrooks*, 148 Tenn. 615, 257 S.W. 858, 33 A.L.R. 330 (1924). An exception is made if the contract is for "necessaries"; the infant is bound to pay the reasonable value of goods and services required for his own maintenance, *McMinn v. Richmonds*, 14 Tenn. 9 (1834), including medical care. *Foster v. Adcock*, 161 Tenn. 217, 30 S.W.2d 239 (1930). But, what do courts mean by "necessaries"? It is likely impossible to frame a definition to cover all cases; flexibility is both desirable and necessary. To be bound upon a contract for necessaries, the overriding requirement is that the infant must be in actual need of the goods or services in question. Whether such actual need exists depends upon (1) the nature of the goods or services, (2) the need of the infant for such goods or services at the time and (3) whether the infant has sources, other than his own credit, for supplying the needed goods or services. Only the last factor is questioned in this case, it being conceded that the medical services were of an essential nature and were needed by the infant at the time they were rendered.

Language in some of the cases which have considered this matter may lead one to the conclusion that an infant can never make a binding contract, even for essential goods or services, if he is living with a parent or guardian obligated to provide support. In the instant case we are of opinion that the law does not preclude the hospital from receiving payment out of the infant's funds merely because the infant lives with her mother.

The argument against granting the hospital's petition is based upon the decision of this Court in *Foster v. Adcock, supra,* wherein it was held that:

". . . if the infant lives with his parent and is in his charge, custody, and control . . . and the care and protection of the parent is duly exercised in his behalf, he cannot bind himself for necessaries." 30 S.W.2d at 240.

In *Hoyt v. Casey*, 114 Mass. 397, 19 Am.R. 371, cited with approval in *Foster*, the Court refused to make an exception to this rule on account of the fact that the infant's father was a poor person who appeared to be unable to pay for medical services furnished to the child. The Court thought that "the poverty of the father would not be sufficient to render the son liable for necessaries furnished to him, but that the plaintiff must go further and show a refusal or neglect of the father to furnish them. . . ." Id. at 399. Similarly, in the instant case it is argued that the only reason the mother of the minor has not paid the hospital bill is that she is an indigent person who is receiving Aid to Families with Dependent Children, indicating, presumably, that inability of the parent to provide necessaries to the child is not relevant and that nothing short of willful refusal on the part of the parent to support the child will subject the latter's property to the payment of debts for necessaries.

This line of argument mistakes the true relevance of the fact that a child is living in the home of a parent and is receiving support from him. In order to render the minor liable, proving that what was supplied is essential to life is only the first step; it must also be shown that the infant had actual need of the articles furnished. *In re Johnstone's Estate*, 64 Ill.App.2d 447, 212 N.E.2d 143 (1965). If he is being supported by a parent or guardian, there is a presumption that the guardian provides all the necessities of life. Thus, when an infant who lives with a supporting parent makes a contract it is presumed that the infant's contract was not for necessaries and, consequently, not valid against him, *Nichol v. Steger*, 74 Tenn. 393 (1880), or that the supplier's contract (usually an implied contract) is actually with the parent, to whom he must look for payment. *Foster v. Adcock, supra; Hoyt v. Casey, supra.* In either case, the infant's estate is protected.

But both *Hoyt* and *Foster* treat the supposed rule as a presumption or legal inference. In *Hoyt* it might have been proven that the infant defendant had contracted

for necessaries, but, in the absence of proof, it was not assumed that he had. The Court observed that:

"... the father was keeping a family together, and was receiving the wages of this minor. While it was proved that he was unable to pay the debts he had incurred, he was, so far as it appeared, doing his best with the means at his command to provide for his family. . . Ordinarily when one renders to another a valuable service, the law will imply a promise to pay . . . but no such implication can arise against a minor residing with his father, delivering over to him his wages, and entitled to look to him for support." Id., 114 Mass. at 400.

In *Foster*, the father had already paid a substantial portion of the bill. On that basis, the debt was held to be the father's obligation, and not that of the child. 161 Tenn. at 220, 30 S.W.2d at 240. The Court declined to presume that he would not be able to pay the balance in the future; there was an insufficient showing that the parent was unable to provide the services.

▌ To the extent that cases like *Foster* and *Hoyt* may be deemed to lay down a rule of law rather than a mere evidentiary presumption, the proper application of the rule is to cases wherein the infant attempts to pledge his credit for food, clothing, or lodging, of his own choosing even though the parents maintain a home for him and furnish such necessaries in accordance with their means and their ideas of what the infant should have. This is how Tennessee cases have understood and applied it in the past. *Elrod v. Myers*, 39 Tenn. 33 (1858); *Nichol v. Steger, supra.*

▌▌ In this case, according to the stipulated facts, the infant receives her support from a merciful government not from the mother's efforts. Even if the mother had her own means of providing the ordinary needs of the family, it is conceded in the appellee's argument that she has been financially unable to provide the needed hospital care. Thus, we hold that the infant's situation is that contemplated by the exception to the general rule that an infant has no capacity to make a contract, viz., "the infant was destitute of the articles, and had no way of procuring them except by his own contract." *Ballinger v. Craig*, 95 Ohio App. 545, 121 N.E.2d 66, at 67 (1953). See also *Elrod v. Myers, supra*, 39 Tenn. at 35, and *Nichol v. Steger, supra.* The cases from other jurisdictions are almost unanimous in saying, either expressly or by necessary implication, that the parents' inability to provide necessaries to the infant is enough to bind the infant. *Goodman v. Alexander*, 165 N.Y. 239, 59 N.E. 145, 55 L.R.A. 781 (1901); *Siegel v. Hodges*, 15 A.D.2d 571, 222 N.Y.S.2d 989 (1961); *Application of Stackpole*, 9 Misc.2d 922, 168 N.Y. S.2d 495 (1957); *Cole v. Wagner*, 197 N.C. 692, 150 S.E. 339, 71 A.L.R. 220 (1929); *Ballinger v. Craig, supra; Werner's Appeal*, 91 Pa. 222 (1879); *Sohio Petroleum Co. v. Jurek*, 248 S.W.2d 294 (Tex.Civ.App.1952); *Contra, Hoyt v. Casey, supra.* We agree with what appears to be the majority rule and hold that the inability of parents to pay for essential medical treatment for an infant renders such treatment a necessary for which the infant is liable.

▌ There is authority to the effect that a party cannot be compensated unless the items were furnished on the infant's own credit. *Mackey v. Shreckengaust*, 27 S.W.2d 752 (Mo.App.1930). In this state, however, the rule is that no express promise need be made by anyone and that a promise will be implied to enable persons entitled to compensation for necessaries to have it, even if the infant is so young that a meaningful express promise could not have been made. See *Magnolia Courts, Inc. v. Webb*, 63 Tenn.App. 209, 470 S.W.2d 16 (1971).

Neither party raises the issue of whether the hospital charges in this case exceed the reasonable value of the services rendered. But the infant is not held to any contract he might make, even for necessaries. Only a fair and reasonable price is to be charged. *McMinn v. Richmonds, supra; Roberts v.*

*Vaughn*, 142 Tenn. 361, 219 S.W. 1034, 9 A.L.R. 1528 (1920); *Magnolia Courts, Inc. v. Webb, supra.* Thus, the question of reasonableness of the hospital's charges will be determined upon remand.

The judgment of the trial court is reversed and this cause is remanded for further proceedings consistent with this opinion. Appellee will pay the costs of this appeal.

FONES, C. J., and COOPER, HENRY and HARBISON, JJ., concur.