697 A.2d 1358

The JOHNS HOPKINS HOSPITAL

v.

Travis PEPPER, et al.

No. 108, Sept. Term, 1996.

Court of Appeals of Maryland.

Aug. 22, 1997.

682

Joseph G. Finnerty, Jr. (William L. Reynolds, Tracey Gann Turner, Piper & Marbury; Richard P. Kidwell, of counsel), Baltimore, for Petitioner.

Howard A. Janet (Janet, Willoughby & Gershon, L.L.C.; Joanne L. Suder, C. Holly Buckley, T. Christine Pham, Suder & Suder, P.A., on brief), Baltimore, for Respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI and RAKER, JJ., and MURPHY, Judge (retired), Specially Assigned.

KARWACKI, Judge.

This medical malpractice action requires us to apply our holding in *Garay v. Overholtzer*, 332 Md. 339, 631 A.2d 429 (1993). In *Garay*, we concluded that a negligently-injured

minor child may make a claim for medical expenses in his or her own name if, *inter alia*, the parents of the child are unable to meet those expenses. We are specifically asked whether the minor plaintiff in the case *sub judice* made a sufficient proffer of evidence to have the jury consider his claim for pre-majority medical expenses. Being convinced that he did, we shall affirm the judgment of the Court of Special Appeals.

## I.

Travis Pepper was born on January 6, 1987, at Easton Memorial Hospital suffering from certain genetic disorders which manifested themselves, in part, in a condition medically described as "Tetralogy of Fallot" with pulmonary atresia. In laymen's terms, Travis suffered at birth from both heart and lung abnormalities. During formation, his heart developed a septal defect allowing blood to flow between the right and left ventricles. Compounding the problem was a portal restriction between Travis's heart and pulmonary artery. Both conditions conspired to send unoxygenated blood to Travis's aorta. *See generally* MERK MANUAL OF DIAGNOSIS AND THERAPY, Ch. 190, 2059 (Robert Berkow, M.D., et al., eds.1992); DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 156 (28th Ed.1994).

The physicians attending Travis determined that the appropriate course of action was to transport him to Johns Hopkins Hospital ("Hopkins"). Hopkins surgeons concluded that Travis's condition would be treated best by two separate surgical procedures—the first to correct the blood flow problem between his heart and pulmonary artery and the second to repair the hole in his ventricular septum. In April of 1987, four-month-old Travis underwent the first of the proposed operations.

Travis's surgery met with post-operative complications, ultimately leading to cardiac arrest. Though doctors were able to revive Travis, severe neurological impairment followed from the resultant oxygen deprivation. The second proposed corrective procedure was never performed.

Approximately eight months later, Travis's parents contacted an attorney who solicited from Hopkins all hospital records relating to Travis's surgery. A subsequent four year period of silence followed from the Peppers. That silence was broken when Terry and Linda Pepper [1] and Travis, through his parents and next friends, filed suit against Hopkins on March 23, 1993. [2]

Count I of the Peppers' six-count complaint, which claimed damages on behalf of Travis individually, alleged that Hopkins, through its employees, negligently failed to treat Travis's condition as non-emergent, negligently failed to undertake alternative and "less risky" modes of treatment, negligently performed surgery upon Travis when his age and health status rendered such surgery inadvisable, and otherwise failed to use reasonable and ordinary care in Travis's overall treatment. Counts II and III of the Complaint likewise sounded in negligence but were actions brought by, respectively, Linda and Terry Pepper individually, for *inter alia*, recovery of medical expenses. Counts IV and V brought on behalf of Travis, and by Terry and Linda Pepper, essentially alleged that Hopkins failed to adequately inform the Peppers of the risks attendant to Travis's surgery. Count VI [3] of the Complaint was a loss of consortium claim brought by Terry and Linda Pepper.

Raising limitations pre-trial in a summary judgment motion, Hopkins successfully argued that Linda and Terry Peppers' claims were time-barred since any cause of action in their favor arose six years previously, and that their suit was filed three years beyond the applicable limitations period. *See*

---

**1.** Terry and Linda Pepper are the parents of Travis Pepper.

**2.** Although the Peppers initially filed their claim before the Health Claims Arbitration Office on March 5, 1993, pursuant to Maryland Code (1989 Repl.Vol., 1993 Supp.), § 3–2A–04 of the Courts & Judicial Proceedings Article, they and Hopkins elected to waive arbitration pursuant to § 3–2A–06A of that same Article.

**3.** The loss of consortium claim was inadvertently numbered in the Complaint as "Count V."

Md.Code (1989, 1994 Supp.), § 5–101 of the Courts & Judicial Proceedings Article. Thus, only Travis's claims of negligent care and lack of informed consent survived partial summary judgment, which was entered in Hopkins's favor on August 2, 1993.

All discovery in the case ceased on December 2, 1993. The Peppers submitted their pretrial memorandum on March 9, 1994. Section 3 of that document was captioned "AMEND-MENTS REQUIRED OF PLEADINGS ." The word "None" followed the caption. Nevertheless, the Peppers filed a First Amended Complaint on June 13, 1994, adding to Travis's original claim of negligence the allegation that, *inter alia,* "Terry and Linda Pepper [ ] are financially unable to provide for the past and future care and treatment Travis will require and need...." Contemporaneous with the filing of their amended complaint, Terry and Linda Pepper also filed a Motion for Reconsideration of the court's dismissal of Counts II and III of their original Complaint. The court denied the motion, and in response to Hopkins's argument, struck the Amended Complaint as untimely.

On the first day of trial, Hopkins moved *in limine* to exclude any evidence concerning medical expenses incurred either by Travis Pepper or his parents. In Hopkins's view, under our holding in *Garay, supra,* a claim for pre-majority medical expenses belongs solely to the parents of an injured child. Since Terry and Linda Pepper lost their parental claims for medical expenses by operation of limitations, Travis's pre-majority medical expenses had no relevancy at trial. Pointing to Travis's profound and permanent dependency on others for his care, Hopkins similarly argued that since Maryland law charges parents with an obligation to support an incapacitated and unemancipated adult child, Travis will never be able to assert a claim for medical expenses in his own name, pre or post majority.

Although the Peppers conceded that a claim for pre-majority medical expenses ordinarily belongs to the parents of an injured child, they pointed out that *Garay* recognized four

circumstances in which minors could recover such expenses in their own right and that at least two of those exceptions applied in the case *sub judice.* The trial court rejected those assertions and granted Hopkins's motion *in limine.* The case thus proceeded to trial on Hopkins's alleged negligence and Travis's damages, limited as they were by the trial court's ruling to his lost future income and non-economic damages.

The jury returned a verdict in Travis's favor for non-economic damages in the amount of $750,000.[4] That figure was subsequently reduced to $350,000 pursuant to Md.Code (1989 Repl.Vol., 1993 Supp.), § 11–108 of the Courts & Judicial Proceedings Article. The jury did not, however, award Travis Pepper damages for lost future earnings, concluding, in response to a special verdict, that Travis would not survive to the age of gainful employment. The Peppers filed a timely appeal to the Court of Special Appeals claiming, *inter alia,* that the trial court erroneously granted Hopkins's motion *in limine,* when they had otherwise proffered sufficient evidence concerning their inability to pay the bulk of Travis's medical expenses. The intermediate appellate court agreed and remanded the case to the Circuit Court for Baltimore City for a new trial on the amount of damages, "if any, Travis Pepper is entitled to recover for medical expenses." *Pepper v. Johns Hopkins Hospital,* 111 Md.App. 49, 80, 680 A.2d 532, 547 (1996). We issued a writ of certiorari to review that decision.

## II.

The present controversy is best illuminated by a review of the constituent facts and law of *Garay v. Overholtzer.* As in the case *sub judice,* in *Garay,* a minor child allegedly suffered injuries as the result of another's negligence. The parents of the child tarried for nearly five years before filing a two-count

---

4. With respect to Travis Pepper's claim for lost future income, the jury specifically answered "no" to the following question: "Do you find by a preponderance of the evidence that Travis Pepper's life expectancy is such that he will likely live to an age at which a person could ordinarily become gainfully employed?" Thus, no lost future income was awarded.

complaint against the wrongdoer. The first count of the complaint sought damages in the injured child's name for his pain and suffering; the second, for parental medical expenses incurred on behalf of the child. Overholtzer, the alleged tortfeasor, moved to dismiss the second count on limitations grounds, claiming that the parents' cause of action for medical expenses accrued on the date of the child's injury. Because the parents waited more than three years to file their action, Overholtzer argued, limitations barred their claim. The trial court agreed and struck the second count. of the complaint.

The parents then amended the complaint. This time, the minor child attempted to claim medical expenses in his own name. Overholtzer again moved to dismiss the claim on limitations grounds, essentially arguing that minors possess no right to bring a claim for medical expenses in their own name and that parents have no right to assign a claim to their minor child that is otherwise barred by limitations. Once again, Overholtzer prevailed.[5]

In considering the matter, we agreed that the right to recover medical expenses ordinarily vests in the parents of a negligently injured minor child.[6] 332 Md. at 365, 631 A.2d at 442 (citing *Hudson v. Hudson*, 226 Md. 521, 530, 174 A.2d 339, 343 (1961)). This rule of standing, we noted, was premised upon the notion that parents have a duty to care for their minor children, and as part of that duty, must of necessity become contractually bound to others for medical services provided on a minor child's behalf. *Id.* at 366, 631 A.2d at 442.

---

5. Minor Garay's parents appealed from that decision to the Court of Special Appeals. We issued a writ of certiorari on our own motion before the intermediate appellate court could consider the case.

6. In that regard, we also noted that

"[i]t is well settled that when a person negligently injures a minor two separate causes of action arise; the minor child has a cause of action for injuries suffered by it, and the parent or parents of the minor child have a cause of action for loss of services and for medical expenses incurred by the parent for the treatment of the minor's injuries."

*Garay v. Overholtzer*, 332 Md. 339, 346, 631 A.2d 429, 432 (1993) (citations omitted).

Indeed, Md.Code (1991, 1993 Supp.), § 5–203(b)(1) of the Family Law Article holds the parents of a minor child "jointly and severally responsible for the child's support, care, nurture, welfare, and education." Included within the scope of this language, of course, is the parental obligation to provide necessary medical care. *Craig v. State,* 220 Md. 590, 596, 155 A.2d 684, 688 (1959). Thus, when a minor child is negligently injured, the parents will and must, as a matter course, assume certain financial obligations that but for the negligence of the tortfeasor they otherwise would have not—*i.e,* the parents suffer legally cognizable damages.

Likewise, a minor child is entitled to recover damages peculiar to it from the same tortfeasor, such as pain and suffering, lost future wages, post-majority medical expenses and permanent disability. *Garay,* 332 Md. at 346, 631 A.2d at 432. The parental claims for medical expenses, and the minor child's for personal injuries, however, are two separate and distinct causes of action, each with its own individual character, and each maintainable in its own right. 332 Md. at 346–49, 631 A.2d at 433–434; *Hudson, supra,* 226 Md. at 528, 174 A.2d at 342; *Hartford County Commissioners v. Hamilton,* 60 Md. 340, 347 (1883). Thus, despite the temporal confluence of the parents' and the minor child's causes of action, we went on to hold in *Garay* that Maryland Rule 2–211 [7] does not compel a joinder of the two in a single suit.

---

**7.** Maryland Rule 2–211 provides in pertinent part:

"**REQUIRED JOINDER OF PARTIES**

(a) **Persons to Be Joined.**—Except as otherwise provided by law, a person who is subject to service of process shall be joined as a party in the action if in the person's absence

(1) complete relief cannot be accorded among those already parties, or

(2) disposition of the action may impair or impede the person's ability to protect a claimed interest relating to the subject of the action or may leave persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations by reason of the person's claimed interest.

The court shall order that the person be made a party if not joined as required by this section. If the person should join as a plaintiff but

That observation becomes significant, of course, in light of limitations. The cause of action which vests in the parents after their minor child is negligently injured by another, for limitations purposes, is like most other civil actions—it must be filed within the three-year period provided by § 5-101 of the Courts & Judicial Proceedings Article. Otherwise, it is barred.

On the other hand, the minor child's cause of action enjoys the tolling period provided by § 5-201(a) of that same article. It provides in pertinent part:

"(a) *Extension of Time.*—When a cause of action subject to a limitation under Subtitle 1 of this title accrues in favor of a minor ..., that person shall file his action within the lesser of three years or the applicable period of limitations after the date the disability is removed."

In *Garay,* the plaintiff parents lost their cause of action for medical expenses due to limitations, but then attempted to waive the right to collect those sums to their minor child in the same action. We deemed such a waiver impermissible for the simple reason that it would conflict with this Court's historically strict stance towards statutes of limitation, 332 Md. at 359, 631 A.2d at 439, by allowing a time-barred claim to

refuses to do so, the person shall be made either a defendant or, in a proper case, an involuntary plaintiff.

(b) **Reasons for Nonjoinder.**—A pleading asserting a claim for relief shall state the name, if known to the pleader, of a person meeting the criteria of (1) or (2) of section (a) of this Rule who is not joined and the reason the person is not joined.

(c) **Effect of Inability to Join.**—If a person meeting the criteria of (1) or (2) of section (a) of this Rule cannot be made a party, the court shall determine whether the action should proceed among the parties before it or whether the action should be dismissed. Factors to be considered by the court include: to what extent a judgment rendered in the person's absence might be prejudicial to that person or those already parties; to what extent the prejudice can be lessened or avoided by protective provisions in the judgment or other measures; whether a judgment rendered in the person's absence will be adequate; and finally, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

proceed where it otherwise should not.[8]

But most significantly, we eschewed any notion that the right to recover medical expenses vests *exclusively* in the parents of an injured minor child. Rather we said that

"if the minor child can show that he or his estate either has paid or will be individually responsible to pay for medical expenses: (1) by emancipation, (2) by death or incompetence of his parents, (3) as necessaries for which his parents are unable or unwilling to pay, or (4) by operation of a statute, then ... the minor is entitled to bring a claim for

---

8. Virtually every jurisdiction that has addressed this issue accords in the view that parental claims for medical expenses are not tolled during the minority of an injured child. *See Doran v. Compton,* 645 F.2d 440 (5th Cir. Unit A May 1981) (applying Texas law); *Perez v. Espinola,* 749 F.Supp. 732 (E.D.Va.1990) (applying Virginia law); *Davis v. Drackett Products Co.,* 536 F.Supp. 694 (S.D.Ohio 1982) (applying Ohio law); *Bergstreser v. Mitchell,* 448 F.Supp. 10 (E.D.Mo.1977) (applying Missouri law), *aff'd,* 577 F.2d 22 (8th Cir.1978); *Myer v. Dyer,* 542 A.2d 802 (Del.Super. Ct.1987); *Rose v. Hamilton Medical Center, Inc.,* 184 Ga. App. 182, 361 S.E.2d 1, *cert. denied,* 184 Ga.App. 910 (1987); *Severe v. Miller,* 120 Ill.App.3d 550, 76 Ill.Dec. 34, 458 N.E.2d 173 (1983); *Walter v. City of Flint,* 40 Mich.App. 613, 199 N.W.2d 264 (1972); *Ostrander v. Cone Mills, Inc.,* 445 N.W.2d 240 (Minn.1989); *Macku v. Drackett Prods. Co.,* 216 Neb. 176, 343 N.W.2d 58 (1984); *D'Andria v. County of Suffolk,* 112 A.D.2d 397, 492 N.Y.S.2d 621 (1985); *Vaughan v. Moore,* 89 N.C.App. 566, 366 S.E.2d 518 (1988); *Day v. MacDonald,* 67 Ohio App.3d 240, 586 N.E.2d 1135 (1990); *Brown v. Jimerson,* 862 P.2d 91 (Okla.Ct.App.1993); *Hathi v. Krewstown Park Apartments,* 385 Pa.Super. 613, 561 A.2d 1261 (1989); *Sax v. Votteler,* 648 S.W.2d 661 (Tex.1983). *But see Vedutis v. Tesi,* 135 N.J.Super. 337, 343 A.2d 171 (1975) (N.J.Stat.Ann. § 2A:14–2.1 provides that parents' claim for damages as a result of injury to their child enjoys benefit of statute tolling child's claim where the parents assert their claim in the same action with their child's claim), *aff'd,* 142 N.J.Super. 492, 362 A.2d 51 (1976); *Lauver v. Cornelius,* 85 A.D.2d 866, 446 N.Y.S.2d 456 (1981) (limitations on both minor's action and parents' action against alleged child molester were tolled during the minor's infancy).

those medical expenses [despite the running of limitations for parental claims]."

332 Md. at 374, 631 A.2d at 446–47.

### III.

The present controversy centers around two pre-trial rulings made by the trial court which ultimately prevented the jury from considering any claims for medical expenses. For its part, Hopkins asserts the existence of both procedural and substantive bars to the recovery of medical expenses by Travis Pepper. We shall begin with the latter.

### a.

Both parties agree that *Garay, supra,* controls the substantive law of this case. They part company, however, on *Garay*'s practical application. Hopkins contends that even assuming that Travis could claim medical expenses in his own name under one of the four *Garay* exceptions, any such claims were non-justiciable at the time of trial. With respect to the necessaries exception, Hopkins argues that "[a] minor does not suffer a justiciable injury *until* his parents are unable to meet ˙his medical expenses and *he becomes responsible* for them under the doctrine of necessities." (Original emphasis). We disagree.

The doctrine of necessaries has long been a feature of Maryland law. *Monumental Bldg. Ass'n. v. Herman,* 33 Md. 128 (1870). It is as much a mechanism to protect minors as it is one to protect those who provide them with necessary services and goods. Generally speaking, minors may avoid contracts entered into by them with adults under the presumption that unequal bargaining power always exists between the two, with the power, and therefore, the potential for overreaching, inuring to the adult. *Monumental Bldg.,* 33 Md. at 131. Those who would use their superior age and intellectual ability to unfairly disadvantage a minor are thus left without legal recourse should they do so, and therefore any incentive to engage in underhandedness. These consider-

ations, however, are typically absent when the minor contracts for "necessaries," variously described as "board, apparel, medical aid, teaching and instruction," and other like needs. *Id.* At least with respect to medical necessaries, the rationale for the departure from the general rule of voidability was poignantly articulated by the Supreme Court of Indiana in *Scott County Sch. Dist. v. Asher,* 263 Ind. 47, 324 N.E.2d 496 (1975):

> "The necessity [for reasonable medical] services is seldom disputed. There is no reason to insulate [the] child ... from the doctor's or hospital's suit. The child was not talked into an improvident purchase.... Since the child received the service and it was a necessary, he is liable."

263 Ind. at 51, 324 N.E.2d at 499. Under that rationale, the Supreme Court of Indiana went so far as to hold that infants and their parents are both jointly and severally liable for the provision of medical care; the child under the doctrine of necessaries, and the parents, under either a common law duty, or statutory duty, to provide for the care and support of their minor children. *Id.* at 51, 324 N.E.2d at 499.

Although we agreed in *Garay* that the doctrine of necessaries could render a child liable for medical services provided to him or her, we declined to extend the doctrine as far as the Supreme Court of Indiana. Rather, we followed the rationale of *Gardner v. Flowers,* 529 S.W.2d 708 (Tenn.1975) wherein the Supreme Court of Tennessee held that since parents are presumed and charged at law to provide for a child's necessaries, a contract entered into by a child is presumed to be for non-necessaries, 529 S.W.2d at 710, and therefore voidable, and in some cases, void *ab initio.* The Tennessee court continued, however, by noting that where the parents are financially unable to provide for needed medical care, the presumption fails, and any such treatment is a necessary for which the infant is contractually liable. *Id.* at 711; *see also Greenville Hosp. Sys. v. Smith,* 269 S.C. 653, 655–56, 239 S.E.2d 657, 658–59 (1977). We also accepted the notion that when the parents are absent from the minor child's life but otherwise alive, that fact alone does prevent the minor from being bound to pay for that which was medically necessary

when furnished if the parents contributed nothing toward the minor's care and support. *See Cole v. Wagner*, 197 N.C. 692, 698, 150 S.E. 339, 341 (1929).

■ Under Maryland law, parents likewise have an obligation under § 5–203(b)(1) of the Family Law Article to provide, *inter alia*, necessary medical care to their minor children, *see* Part II., *supra*, imparting to the parents of an injured child both a primary responsibility to do so, and a primary right to recover medical expenses from a third-party tortfeasor. But when parents are unwilling or truly unable to pay for such expenses, leaving the child or his or her estate potentially bound in contract, principles of reciprocity demand that the child be given the opportunity to recover those expenses from the wrongdoer. *Garay*, 332 Md. at 371, 631 A.2d at 445.

Hopkins contends that at the time of trial, the parents were providing for all of Travis's medical necessaries (a point hotly disputed by the Peppers and discussed further *infra* ) and that therefore no right vested in Travis to recover those expenses in his own name. As to any claim for future medical expenses, Hopkins maintains that Travis has no claim for such expenses "unless and until the [Peppers] fail to provide them." We disagree for a variety of reasons.

■ Despite Hopkins's implicit assertion to the contrary, the doctrine of necessaries was never intended to be a limitation on a child's right to recover medical expenses from the person(s) responsible for causing them. It is merely an acknowledgment that for certain services, a minor should not be heard to disavow a contract which by personal necessity required his or her participation. In a case of catastrophic medical injury, we can certainly conceive of a situation where the parents can afford some but not all of the injured child's past, present, and future medical expenses. Assuming limitations has barred parental claims for such, the doctrine of necessaries protects an injured minor's right to recover from a tortfeasor medical expenses that his or her parents are ill-able to afford and for which he or she ultimately may be liable.

Otherwise, the child would be twice victimized—once at the hands of the tortfeasor, and once by parents who, for whatever reason, failed to timely prosecute their claims for medical expenses. We cannot countenance a result that would leave the only innocent victim in such a transaction uncompensated for his or her injuries and potentially beholden to the compelled generosity of the taxpayer. Public policy and justice demand that an injured minor's right to recover medical expenses in his or her own name after limitations has barred parental claims begin where the parents' financial ability to provide for medical necessaries ends. That is the rule of *Garay.*

■ Moreover, Hopkins's suggestion that a minor child's right to recover expenses for medical services only arises when he or she is liable to another for the provision of those services runs contrary to the general principle that "recovery of damages based on future consequences of an injury may be had ... if such consequences are reasonably probable or reasonably certain" to occur. *Cooper v. Hartman,* 311 Md. 259, 270, 533 A.2d 1294, 1299 (1987); *Weimer v. Hetrick,* 309 Md. 536, 549, 525 A.2d 643, 650 (1987); *Pierce v. Johns–Manville Sales Corp.,* 296 Md. 656, 666, 464 A.2d 1020, 1026 (1983). As a corollary to that rule, we think a minor child's showing that his or her parents were in the past, are presently, or in the future will become, financially unable to meet his or her medical needs, sufficiently triggers that child's right to recover medical expenses in his or her own name from a wrongdoer.[9] That a child is presently not liable for such

---

9. Hopkins also meekly suggests that because a parent is obliged to support a destitute child, no such child could ever claim medical expenses in his or her own name. Md.Code (1991, 1993 Supp.), § 13–102 of the Family Law Article provides:

"(a) *Duty to support destitute parent.*—If a destitute parent is in this State and has an adult child who has or is able to earn sufficient means, the adult child may not neglect or refuse to provide the destitute parent with food, shelter, care, and clothing.

(b) *Duty to support destitute adult child.*—**If a destitute adult child is in this State and has a parent who has or is able to earn sufficient**

expenses is irrelevant. The law does not require a judgment against an injured child or his or her estate before medical expenses may be individually recovered; only a showing that such expenses are or will be incurred as a natural and probable result of the tortious injury, and that at some point, his or her parents will be financially incapable of meeting those expenses.

■ We by no means suggest however, as do the Peppers, that this translates into a minor child's entitlement to recover those sums that the parents have expended and can expend for the child's medical care when parental claims for such expenses are barred by limitations. That also is the rule of *Garay*. In that regard, we continue to reject the view that when parental claims are barred by limitations, those claims are implicitly assigned to the minor child. 332 Md. at 365, 631 A.2d at 442. *See e.g., McNeill v. United States,* 519 F.Supp. 283, 290 (D.S.C.1981); *Sox v. United States,* 187 F.Supp. 465, 469–70 (E.D.S.C.1960); *Myer v. Dyer,* 643 A.2d 1382, 1387 (Del.Super.Ct.1994); *Boley v. Knowles,* 905 S.W.2d 86, 90 (Mo.1995); *see generally,* John H. Derrick, Annotation, *Tolling of Statute of Limitations, on Account of Minority of Injured Child, as Applicable to Parent's or Guardian's Right of Action Arising out of Same Injury,* 49 A.L.R.4th 216 (1987 & 1996 Supp.). Not only is this approach the minority view, *see* note 8, *supra,* it does not accord with this Court's strict stance towards statutes of limitation. *Garay,* 332 Md. at 365, 631 A.2d at 442. Parents still must file their claims for

means, the parent may not neglect or refuse to provide the destitute adult child with food, shelter, care, and clothing.

(c) *Penalties.*—A person who violates any provision of this section is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $1,000 or imprisonment not exceeding 1 year, or both." (Emphasis added).

Although we agree that the scope of § 13–102(b) of the Family Law Article, like its counterpart § 5–203(b)(1), is broad enough to encompass necessary medical care, neither purports to limit a child's right of recovery. Both provisions are criminal statutes serving as a sword in the State's arsenal to be used against those who would avoid their parental obligations. Neither was intended to be a shield for those guilty of committing a tortious acts.

medical expenses resulting from the tortious injury of their child within the limitations period provided in § 5–101 of the Courts and Judicial Proceedings Article. Because Linda and Terry Pepper failed to do so, their claims for medical expenses are forever barred.

### b.

In addition to a substantive bar to Travis's claims for medical expenses, Hopkins also asserts a procedural bar to those same claims. Specifically, Hopkins contends that the trial court's decision to exclude evidence of medical expenses was nothing more than an enforcement of the earlier, and in Hopkins's view proper, striking of the Peppers' amended complaint. *See* Part I., *supra.* As the Court of Special Appeals pointed out, however, the Peppers did not argue on appeal that that ruling was erroneous and prejudicial. Rather they challenged the trial court's decision to exclude evidence of any and all medical expenses. Hopkins views these events as symbiotic. The Peppers, on the other hand, assert that the striking of the amended complaint was irrelevant, and in no way influenced the trial court's decision to exclude evidence of medical expenses.

The principal point of contention raised by Hopkins is that on the eve of trial, the Peppers materially changed their position by attempting to assert a claim for medical expenses in Travis's name. Count I of the Peppers' original complaint, stated in paragraph 13 that

> "As a direct and proximate result of the negligence of the defendants as described above, Travis will, upon attaining maturity, suffer loss of earnings and impairment of earning capacity...."

Hopkins claims that this passage "leaves no doubt that [the Peppers] never intended to assert a claim by Travis for his pre-majority medical expenses." Curiously, Hopkins fails to note that in the preceding passage in that same paragraph, the Peppers claimed that as a result of Hopkins's alleged negligence, Travis proximately

"suffered and will continue to suffer permanent and severe damages to his body and nervous system, including but not limited to, severe lack of vision, seizures, severe cerebral palsy, anoxic encephalopathy, spastic quadriparesis, brain damage, severe mental and motor retardation, spasticity, loss of mobility, and other related disabilities, *which have in the past necessitated and will in the future necessitate expenses for: physical therapy and testing, frequent medical evaluation and care, medical treatment, special functional instruction and personal attendance and care.*" (Emphasis added).

Under our liberal rules of pleading, a plaintiff need only state such facts in his or her complaint as are necessary to show an entitlement to relief. Md. Rule 2–303(b); *Fletcher v. Havre De Grace Fireworks Co.*, 229 Md. 196, 200, 177 A.2d 908, 909 (1962)(pleading must state with reasonable accuracy issue between the parties so that the defendant may be informed as to what he or she is required to answer and defend).

The amended complaint in *Garay* (which was dismissed on limitations grounds) stated that " 'large sums have been expended for [the minor child's] medical care and great sums will be incurred on his behalf *and by him* for future medical services during and after his minority.' " 332 Md. at 373–74, 631 A.2d at 446. (Original emphasis). In reversing the trial court's dismissal of that complaint, we observed that it

"set[ ] forth a claim for the minor's personal injuries and a claim by the minor for post-majority medical expenses. These claims are clearly vested in the minor. Moreover, if it can be shown that the minor's estate has paid or is responsible to pay for any pre-majority medical expenses, this claim is also vested in the minor. Because § 5–201 of the Courts [ & Judicial Proceedings] Article tolls the statute of limitations [for the minor], [he] is possibly entitled to relief on these claims."

*Id.* at 374, 631 A.2d at 446.

We implicitly stated in our discussion of that amended complaint that the minor in *Garay* properly set forth a claim

for medical expenses in his own name, with any recovery on that score subject to a future showing that, *inter alia,* his "parents are unable or unwilling to pay" those expenses. *Id.* at 374, 631 A.2d at 446. We see no fundamental difference between claims set forth by Travis Pepper in the case *sub judice,* and those of the minor in *Garay.* Indeed, Count I of the Peppers' original complaint consisted exclusively of those claims asserted by Travis Pepper, individually—including those claims for past and future medical expenses. Hopkins's suggestion that the Peppers "were unambiguously asserting a claim by Travis solely for those medical expenses that he would incur coincident with his *future* claim for lost wages" is at best a myopic view of Count I of the Peppers' original complaint.

Hopkins implicitly argues that a minor must specifically plead a parental inability to pay medical expenses in order to recover them in his own name. We find no authority for that assertion, and the only jurisdiction that has decided an analogous issue reached a contrary conclusion. New York courts have held that in an action against an infant for necessaries, the plaintiff need not allege in the complaint that the parents are not able to provide those necessaries. *See Przestrzelski v. Board of Education,* 419 N.Y.S.2d 256, 257, 71, A.D.2d 743, 743 (1979); *In re Taylor,* 275 N.Y.S. 934, 937, 153 Misc. 673, 674 (1934). That view accords with Maryland law.

 Where certain damages are the natural, necessary, and logical consequence of the acts of the defendant, such damages need not be specifically requested in the complaint. A general claim for damages will suffice. *See Nicholson v. Blanchette,* 239 Md. 168, 180–81, 210 A.2d 732, 738–39 (1965); *Weiller v. Weiss,* 124 Md. 461, 466–67, 92 A. 1028 (1915). Where a minor child brings suit for injuries sustained as the result of the negligence of another, and parental claims against the wrongdoer are barred by limitations, his or her measure of damages with respect to medical expenses will be those costs for medical services that the parents cannot afford. As with any damage claim seeking medical expenses however,

the child will have to show to what extent the parents are financially incapable of providing medical necessaries. To that extent, he or she is entitled to recover. Such damages are foreseeable upon the negligent injury of a child, and need not be specifically pleaded.

Thus, we agree with the Peppers' assertion that "the striking of [the Peppers'] amended complaint [was] irrelevant." Their original complaint adequately set forth a claim for medical expenses in Travis's name.

 Hopkins nevertheless argues that even assuming that Count I of the Peppers' complaint asserted a claim by Travis for medical expenses, their position during discovery failed to adequately notify Hopkins that the Peppers' were unable to afford Travis's medical care. In that regard, Hopkins maintains that the trial court properly exercised its discretion by excluding the Peppers' evidence of medical expenses as prejudicial to Hopkins. Although we agree with Hopkins that a trial judge maintains considerable latitude in controlling the conduct of a trial subject only to an abuse of discretion standard, *Harris v. State*, 344 Md. 497, 506, 687 A.2d 970, 974 (1997); *Niemotko v. State*, 194 Md. 247, 253, 71 A.2d 9, 11 (1950), no discretion is afforded to trial judges to act upon an erroneous conclusion of law.

Contrary to Hopkins's implicit assertion, however, the trial judge did not appear to consider the striking of the amended complaint and Hopkins's claims of prejudice and surprise an issue in its decision to exclude evidence of Travis's claim for medical expenses. Rather, she believed the issue to be "whether or not this case falls within the necessaries exception [articulated in *Garay, supra* ] in which the parents would have to be unwilling or unable to pay." In considering the Peppers' proffer, she opined that "I cannot find from what I have heard to this point that there is a showing that these folks are within the category of indigent persons.... So absent some further more compelling evidence to show me that [the Peppers'] are within the class of persons who would be characterized as

unable to pay then [Hopkins's] [m]otion [to exlcude evidence of medical expenses] is granted."

The trial judge competently grappled with a number of pre-trial issues, but she misapprehended our holding in *Garay*. Nowhere did we suggest that indigency is a prerequisite to a child's recovery of medical expenses under the "necessaries exception" to the general rule that claims for medical expenses vest primarily in the parents of an injured child. As we explained in Part III. a., *supra*, and as pointed out by amicus for the Peppers, our holding in *Garay*, was "simply intended to preclude pre-majority expense claims by the minor *to the extent* that his or her parents have the means . . . to furnish necessary medical and attendant care but failed to assert their claims against the tortfeasor within the limitations period." Whether or not parents are able to afford necessary medical care for their negligently injured minor child will vary from case to case according to the circumstances of the parties involved, including, but not limited to, parental income, existing financial assets and obligations, the number of children in the family, available insurance coverage, the cost of living and inflation rate, whether or not both parents work, or are even capable of working in light of the child's injuries, and other economic and non-economic factors too numerous to list. It will also vary, of course, on the nature of the injury and the duration and manner of treatment. These infinitely variable factors preclude a bright line rule concerning the standard by which the affordability determination can be made. More often than not, juries will have to decide with the aid of expert and lay testimony when necessary, whether and to what extent an injured child's medical necessaries exceed the financial ability of the parents. We note however, that as a matter of public policy, government assistance programs are not a factor to be used in making that determination, otherwise the taxpayer would bear a financial burden that rightfully should be borne by the tortfeasor. The same holds true with respect to the often remarkable gratuity of strangers and friends.

■■■ Insofar as the trial judge equated an inability to pay for medical expenses with indigency, she erred. We agree with the intermediate appellate court that "a jury issue was presented by the evidence set forth in the Peppers' proffer"— namely, to what extent they could afford Travis's medical needs.

In assessing the proffer made to the trial court by the Peppers concerning their financial abilities, the Court of Special Appeals neatly and comprehensively summarized the relevant testimony offered by the Peppers:

" Linda Pepper no longer works outside the home because she must be home to care for Travis; Terry Pepper earns $20,795 a year working at his own business as an automobile mechanic; after paying taxes, the Peppers have a net monthly income of $1,537.75, which is well short of their monthly expenses of $2,289.

The Peppers do not have an individual savings account. They hold in their names, as parents of their older son, Tyler, age 10, a savings account worth about $18,000, which is designated as his college fund. They have an account in Travis'ss name containing about $1,700, comprised of gifts given to him. Mr. and Mrs. Pepper each hold about $9,000 in individual retirement accounts, which represent the only retirement funds they have available.

According to the materials set forth in the proffer, Mr. Pepper's income and the combined savings of the Peppers are insufficient to pay for all of Travis's future medical needs. The child has limited vision, severe cerebral palsy, partial motor paralysis of all four limbs, brain damage, severe mental and motor retardation, and spasticity. He cannot stand or sit up without assistance. In fact, he requires assistance with all of his activities of daily living. Appellants proffered that Travis needs a wide range of medical, rehabilitative, and therapeutic services, which, as of the date of trial, he was not receiving. Appellants proffered deposition testimony of Dr. Derakshani, who opined that Travis needed a van with a lift, a wheelchair and other devices to assist him in standing and sitting, an electric bed,

frequent physical therapy, and home modifications. Dr. Derakshani also testified that Travis needed daily medication and yearly muscle surgery. Raphael Minsky, a special rehabilitative psychologist, affirmed by affidavit that Travis needs physical therapy three times a day; occupational and speech therapy once a week; and vision services once a month. He also needs lifting and positioning devices, such as a prone stander, bath chair, wheelchair, and electric hospital bed, because his mother has difficulty lifting and moving him. According to Dr. Minsky, the Peppers' home needs to be modified to accommodate a disabled person.

Appellants further proffered that Travis was not receiving necessary medical services and equipment. He was not receiving physical, speech, occupational, hydro, or vision therapies because the Peppers could not afford those services. The Peppers did not have much of the equipment they needed for Travis, including a wheelchair, electric bed, shower chair, and a prone stander.

The Peppers also proffered deposition testimony and an affidavit of an expert economist, Mr. Smith, who opined that the total present value of "Travis's medical, home attendant care, transportation, therapeutic, and equipment and supplies needs" for the remainder of his life was in excess of $7,600,000. Most of these expenses, which average about $117,000 a year, are not covered by the Peppers' insurance policy. For example, the Peppers' insurance does not cover home nursing, ambulatory apparatuses, home modifications, durable medical equipment for home use, long-term (*i.e.,* lasting more than sixty days) physical, speech or occupational therapies, and vision training.

The Peppers proffered that they were unwilling to provide for Travis if it meant either selling their home to pay for his medical expenses or tapping into their retirement accounts and Tyler's college fund.

On July 19, 1994, at trial but outside the hearing of the jury, the Peppers proffered that they would have testified

'as to their income and financial inability and/or unwilling-ness to afford and/or provide Travis with the necessities his physician said he will need to survive. They also would have testified that the insurance policy that they had with the Delmarva does not provide for any of the services Travis requires such as physical therapy, hydrotherapy, occupational, speech, vision therapy, home health aid and, after he reaches—becomes an adult, the educational ser-vices that would go on. It does not cover durable medicals, does not cover but a small amount of prescriptions and office visits. I think it's all but $10.00 at this time. And does not cover the—over 95% of all of the items that his— Dr. Derakshani and Dr. Minsky indicated would—would have indicated, to a reasonable degree of medical certainty, were necessary for this patient.

. . . .

Emmanual Smith is an economist and if permitted to testify, he would have testified to a reasonable degree of economic probability that the education, medical care and other related expenses related to Travis Pepper, [as stated by Dr. Derakshani and Dr. Minsky,] would have exceeded $7.4 million, all of which would have been deemed necessary for this patient, which the Peppers could not afford.' " (Internal footnotes omitted).

*Pepper v. Johns Hopkins Hospital,* 111 Md.App. at 64–67, 680 A.2d at 539–540 (1996).

It strains credulity to suggest that there is no meaningful dispute concerning the ability of the Peppers to meet Travis's expenses. Indeed, based upon the record before us, we find it difficult to imagine that a family of substantial means could bear the financial burden of his care. The Peppers claim a yearly income of approximately $21,000, and have one other child. Pre-majority medical expenses for Travis are alleged to be slightly in excess of 1.1 million dollars and Hopkins does not dispute those figures. Even taking into account available insurance, a cursory review of the record reveals that Terry and Linda Pepper are, at some level, financially incapable of

providing all of Travis's medical necessaries. Any other view ignores stark reality.

Even assuming that the trial judge acted in response to Hopkins's claims of prejudice and surprise, we find such claims to be meritless. As we indicated in Part III. b., *supra*, Count I of the Peppers' original complaint sufficiently informed Hopkins of the nature of Travis's claims and the damages he sought. This case is, and has always been, primarily about the recovery of medical expenses. Although Terry and Linda Peppers' claims were barred by limitations, Travis was entitled under our holding in *Garay* to recover medical expenses in his own name to the extent his parents were, *inter alia,* unable to meet his past, present, and future, medical needs. Hopkins acquired sufficient, if not overwhelming, information pre-trial that such was the case. Under the circumstances presented, Travis is entitled to a new trial on damages, Hopkins's liability for his injuries having been previously established.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO FURTHER REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW TRIAL ON DAMAGES. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.*

CHASANOW, J., concurs in the result only.