**Trisha GRANT, individually and as next friend of Hudson Knost, Gabriel Knost, and Grace Knost, Plaintiffs,**

v.

**KIA MOTORS CORPORATION; and Kia Motors America, Inc., Defendants.**

**Case No. 4:14-cv-79**

United States District Court, E.D. Tennessee, Winchester Division.

Signed May 10, 2016

Benjamin E. Baker, Jr., R. Graham Esdale, Jr., Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Montgomery, AL, Jonathan P. Farmer, Farmer, Purcell, White & Lassiter, PLLC, Nashville, TN, for Plaintiffs.

John Randolph Bibb, Jr., R. Dale Bay, Whitney Henry Kimerling, Ryan Nelson Clark, Lewis, Thomason, King, Krieg & Waldrop, P.C., Nashville, TN, for Defendants.

### ORDER

HARRY S. MATTICE, JR., UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Kia Motors Corporation's ("KMC") Motion for Partial Summary Judgment (Doc. 74), and Defendant Kia Motors America, Inc.'s ("KMA") Motion for Summary Judgment (Doc. 76). For the reasons stated herein, KMC's Motion for Partial Summary Judgment will be **GRANTED in part** and **DENIED in part**, and KMA's Motion for Summary Judgment will be **GRANTED**.

## I. BACKGROUND

On February 10, 2014, then-minor Hudson Knost and his minor siblings were involved in a single vehicle rollover accident. The Parties agree that Plaintiffs' expert report accurately portrays the relevant facts, which are summarized as follows:

> Mr. Hudson Knost was driving a 2001 Kia Sportage eastbound in the #1 lane of I-24 when he apparently lost control of the vehicle, rolled over in the median and came to rest in the westbound lanes of I-24. His siblings, Gabriel Knost and Grace Knost were also in the vehicle at the time of the accident. Hudson Knost was found partially ejected out the open driver's door, suspended at the abdomen by his seatbelt. Gabriel Knost was completely ejected from the vehicle, while Grace Knost was found moving, in the left rear seat of the vehicle.

(Doc. 75 at 2). It is also undisputed that the 2001 Kia Sportage ("the Sportage") rolled over seven times before coming to a stop on the westbound lanes of I-24.

On July 2, 2014, Plaintiffs filed this action in the Circuit Court of Davidson County, Tennessee. Defendant KMC removed the case to the United States District Court for the Middle District of Tennessee on August 4, 2014, and the case was ultimately transferred to this Court pursuant to 28 U.S.C. § 1406(a). (*See* Doc. 31). On February 13, 2015, Plaintiffs filed their Amended Complaint. (Doc. 46). Therein,

Plaintiff Trisha Grant, individually [1] and as next friend of her three minor children, brings causes of action for strict liability, negligence, and breach of warranty.[2] Specifically, Plaintiffs allege that "the 2001 Kia Sportage was unreasonably dangerous and defective in that the door latch system was inadequate to retain occupants during an accident, the restraint system failed to contain the occupants in the vehicle, and the vehicle was defective in its handling and stability." (*Id.* at 6). Furthermore, Plaintiffs, without specifying whether Trisha Grant individually or her children individually are entitled thereto, seek

> monetary damages from Defendants to compensate them for the following elements of damage:
> (a) Past and future medical expenses;
> (b) Future loss of earnings capacity;
> (c) Past and future mental anguish and emotional distress;
> (d) Past and future pain and suffering;
> (e) Loss of society and companionship;
> (f) Lost value of life and life enjoyment;
> (g) Property damage;
> (h) Pain and suffering.

(Doc. 46 at 9). Finally, Plaintiffs claim that Defendants' actions warrant the imposition of punitive damages. (*Id.* at 9–10).

On February 16, 2016, Defendants filed separate dispositive motions. Defendant KMA moved for summary judgment on the grounds that it is not a "manufacturer," but rather is a "seller." Accordingly, KMA claims that Tenn. Code Ann. § 29–28–106 bars product liability actions against KMA.[3] (Doc. 76 at 2). In the alternative, KMA joins KMC's motion for partial summary judgment. (*Id.* at 2–3). Defendant KMC moved for partial summary judgment on the following claims: (1) Plaintiff Trisha Grant's individual claims; (2) Plaintiffs' claims for punitive damages; (3) Plaintiffs' defect claims relating to the driver's door latch system; and (4) Plaintiff Hudson Knost's claims relating to his alleged psychological conditions arising from the crash. (Doc. 74 at 2). The Court will discuss each motion in turn.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials

---

**1.** Plaintiff Grant, who was not involved in the crash, is the Knost children's mother.

**2.** Plaintiffs also make reference to a claim of misrepresentation in their Amended Complaint. (Doc. 46 at 2). As Defendants note, Plaintiffs failed to plead a cause of action for misrepresentation or any factual allegations relating thereto. (Doc. 75 at 2 n.1). Moreover, Plaintiffs did not present any arguments to address this shortcoming in their responses to Defendants' Motions. (*See* Docs. 78, 79, 80). Accordingly, the Court finds that, to the extent that Plaintiffs plead a cause of action for misrepresentation, it has been abandoned and is hereby **DISMISSED WITH PREJUDICE**. *See, e.g., Clark v. City of Dublin, Ohio,* 178

Fed.Appx. 522, 524–25 (6th Cir. 2006) ("The District Court also properly found that Mr. Clark's Motion Contra in response to Appellees' Motion for Summary Judgment did not properly respond to the arguments asserted against his ADEA and ADA claims by the Appellees. The District Court properly granted summary judgment because the Appellant failed to meet his Rule 56 burden. *In this ruling, the District Court did not err when it found that the Appellant abandoned his ADEA and ADA claims.*") (emphasis added).

**3.** All of Plaintiffs' claims qualify as products liability actions. *See* Tenn. Code Ann. § 29–28–102(6).

cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). When ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its ... pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348; Fed. R. Civ. P. 56). The nonmoving party must present sufficient

probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475–76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Moldowan*, 578 F.3d at 374. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

## III. KMA'S MOTION FOR SUMMARY JUDGMENT

Defendant KMA argues that because it is only a "seller" of the Sportage, Tennessee law bars Plaintiffs' products liability claims against Defendant KMA.[4] Tennessee law provides that

> [n]o product liability action, as defined in § 29-28-102, shall be commenced or maintained against any seller, other than the manufacturer, unless:
>
> (1) The seller exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the alleged harm for which recovery of damages is sought.

Tenn. Code Ann. § 29–28–106.[5] The term "seller" is statutorily defined to include "a

---

4. It is undisputed that Tennessee law governs Plaintiffs' claims. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. And whether the law of the

state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern.").

5. Tenn. Code Ann. § 29–28–106 contains four additional exceptions that are irrelevant to the instant litigation.

retailer, wholesaler, or distributor, and means any individual or entity engaged in the business of selling a product, whether such sale is for resale, or for use or consumption," Tenn. Code Ann. § 29–28–102(7), whereas the term "manufacturer" includes "the designer, fabricator, producer, compounder, processor or assembler of any product or its component parts." Tenn. Code Ann. § 29–28–102(4). KMA argues that because "KMA's role was limited to importing the subject Sportage to the United States and distributing it to dealers for resale," and because "KMA did not design, engineer, or manufacture the 2001 Sportage," it is entitled to summary judgment as to all of Plaintiffs' claims. (Doc. 77 at 3). Plaintiffs present two principal arguments in response, which the Court will discuss in turn.

### A. Preemption

First, Plaintiffs claim that because KMA is a "manufacturer" under the National Traffic and Motor Vehicle Safety Act ("NTMVSA"), 49 U.S.C. § 30101 *et seq.*, KMA "cannot now seek immunity under Tennessee's Innocent Seller Statute." (Doc. 79 at 6). Plaintiffs devote the vast majority of their argument to outlining KMA's responsibilities as a "manufacturer" under the NTMVSA. (*Id.* at 4–5). Only in a footnote do Plaintiffs make any legal argument whatsoever. Therein, Plaintiffs argue in a conclusory fashion that the definition of "manufacturer" in the NTMVSA preempts the definition of "manufacturer" found in Tenn. Code Ann. § 29–28–102(4). (Doc. 79 at 6 n.1).

■ It is elementary that state law is preempted to the extent that it conflicts with federal law. The Supreme Court of the United States has declared that such a conflict arises "where it is impossible for a private party to comply with both state and federal law, and where under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000) (internal quotation marks and citations omitted).

■ Here, Plaintiffs claim that "it is impossible for KMA to comply with both federal and state law where one holds KMA liable as a manufacturer and the other grants KMA immunity. Therefore, the [NTMVSA] would preempt the Tennessee statute's definition of 'manufacturer.' " (Doc. 79 at 6 n. 1). Plaintiffs' conclusory analysis, however, is unpersuasive. The NTMVSA is undoubtedly a conduct-regulating statute imposing affirmative duties on "manufacturers" as defined in the Act. *See* 49 U.S.C. § 30101 *et seq.* Conversely, the Tennessee statute at issue grants immunity from suit in products liability actions grounded in state law. Tenn. Code Ann. § 29–28–106 ("No product liability action, as defined in § 29–28–102, shall be commenced or maintained against a seller, other than the manufacturer."). By definition, an immunity statute is not conduct-regulating, but rather operates as an exemption from liability notwithstanding one's conduct. Because the state law at issue only operates to immunize KMA from state law products liability actions and does not, for example, affirmatively require KMA to do something that federal law prohibits, the Court finds that it is not impossible for KMA to comply with both federal and state law. *Cf. PLIVA, Inc. v. Mensing*, 564 U.S. 604, 131 S.Ct. 2567, 2578, 180 L.Ed.2d 580 (2011) ("If the Manufacturers had independently changed their labels to satisfy their state-law duty, they would have violated federal law ... Thus, it was impossible for the Manufacturers to comply with both their state-law duty to change the label and their federal law duty to keep the label the same."). Accordingly, the definitions of "seller" and

"manufacturer" found in Tenn. Code Ann. § 29–28–102 are not preempted by the NTMVSA.[6]

## B. Exceptions to Tenn. Code Ann. § 29–28–106

Next, Plaintiffs argue that even if KMA is a "seller" under Tennessee law, it falls under the first exception to Tenn. Code Ann. § 29–28–106, which exempts from immunity sellers who "exercised substantial control over that aspect of the ... packaging or labeling of the product that caused the alleged harm for which recovery of damages is sought." Tenn. Code Ann. § 29–28–106(1). Specifically, Plaintiffs claim that KMA "actively participates in developing service manuals; developing product brochures; and handling customer complaints and lawsuits through its own reporting system." (Doc. 79 at 6) (citing deposition of Michele Cameron[7]). Moreover, Plaintiffs allege that KMA is the publishing corporation listed on the 2001 Sportage Owner's Manual, that KMA produced technical service bulletins, and that "KMA is responsible for handling customer complaints for the subject KIA vehicle

and would have been in the best position to warn consumers of known defects." (*Id.* at 6–7). Tellingly, Plaintiffs sum up their argument as follows: "Therefore, KMA's actions fall within the scope of the first exception to Tennessee's Innocent Seller Statute since KMA *exercised substantial control over warnings*, and its failure to warn caused Plaintiffs' harm." (*Id.* at 7) (emphasis added).

At the outset, the Court notes that exercising substantial control over warnings is not grounds for the abrogation of immunity from products liability lawsuits under Tenn. Code Ann. § 29–28–106(1). Because this exception only applies to sellers that exercise substantial control over the aspect of design, testing, manufacture, packaging, or labeling that caused the alleged harm, the Court finds that Plaintiffs' allegations regarding KMA's control over warnings and its control over customer complaints are insufficient as a matter of law to overcome KMA's motion for summary judgment.

■ Even accepting Plaintiffs' remaining allegations as true,[8] namely that KMA

---

6. Plaintiffs do not argue under *Crosby*'s second test that the Tennessee definition of "seller" would stand as an obstacle to the accomplishment of the purposes and objectives of the NTMVSA. For the sake of completeness, however, the Court notes that any such argument would be unavailing. The NTMVSA provides for federal enforcement of its provisions. 49 U.S.C. § 30163(a)(1) ("The Attorney General may bring a civil action in a United States district court to enjoin a violation of this chapter or a regulation prescribed or order issued under this chapter."). Nothing about the Tennessee law at issue keeps the federal government from enforcing the NTMVSA to its fullest extent. The United States Court of Appeals for the District of Columbia Circuit has recognized that the NTMVSA "was designed as a preventive measure supplementary of and in addition to the common law of negligence and product liability. Determinations of fault *or liability* relevant to the award of damages at common

law *are not controlling on the interpretation of the scope of [the NTMVSA]." United States v. General Motors Corp.*, 518 F.2d 420, 434 (D.C. Cir. 1975) (emphasis added). Because the Tennessee law at issue only operates to limit liability for state law causes of action, it does not stand as an obstacle to, and accordingly is not preempted by, the NTMVSA.

7. Michele Cameron is KMA's corporate representative, and is "responsible for establishing policy and procedure related to all facets of customer contact or customer handling of issues." (Doc. 79 at 6).

8. An in-depth analysis reveals that at least some of Plaintiffs' claims lack support in the record. For example, Plaintiffs, citing to Michele Cameron's deposition, claim that KMA "actively participates in developing service manuals." (Doc. 79 at 6). In her deposition, however, Cameron actually testified that Defendant KMC produces service manuals and

actively participates in developing service manuals, product brochures, service bulletins, and is the publishing corporation of the 2001 Kia Sportage Owner's Manual, (hereinafter "the documents"), Plaintiffs have failed to establish that any of the documents "caused the alleged harm for which recovery of damages is sought." Tenn. Code Ann. § 29–28–106. While Plaintiffs' Amended Complaint arguably alleges that the documents may have caused their harm, (*see* Doc. 46 at 8), Plaintiffs have failed to set forth any evidence whatsoever in their response to Defendant KMA's motion for summary judgment to support such a theory. It is well-established that in order to preclude summary judgment, a party may not "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan*, 578 F.3d at 374. Plaintiffs' failure to present such evidence is dispositive. The Court thus finds that the exception to seller immunity from products liability actions outlined in Tenn. Code Ann. § 29–28–106(1) is inapplicable as to KMA.

Because KMA is a "seller" as defined in Tenn. Code. Ann. § 29–28–102, and no exceptions in Tenn. Code Ann. § 29–28–106 apply, Plaintiffs cannot maintain a products liability action against KMA. Accordingly, Defendant KMA's Motion for Summary Judgment (Doc. 76) will be **GRANTED**, and Plaintiffs' claims against KMA will be **DISMISSED WITH PREJUDICE.**

## IV. KMC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Trisha Grant's Individual Claims

Defendant KMC first argues that Plaintiff Trisha Grant's individual claims [9] are barred by Tennessee's ten-year statute of repose for products liability actions. Plaintiff Grant, however, believes that the statute of repose does not bar her claims. In the alternative, she argues that the Tennessee courts of appeal have adopted a "waiver rule" through which her children can recover their pre-majority medical expenses. The Court will address each argument in turn.

#### 1. Statute of Repose

The limitations period applicable to products liability actions reads, in its entirety:

[a]ny action against a manufacturer or seller of a product for injury to a person or property caused by its defective or unreasonably dangerous condition must be brought within the period fixed by §§ 28-3-104, 28-3-105, 28-3-202 and 47-2-725, but notwithstanding any exceptions to these provisions, it must be brought within six (6) years of the date of injury, in any event, the action must be brought within ten (10) years from the date on which the product was first purchased for use or consumption, or within (1) year after the expiration of the anticipated life of the product, whichever is the shorter, except in the case of injury

that she "believe[s] there is an opportunity [for KMA] to at least review and maybe provide some feedback." (Doc. 80-1 at 10). As a matter of law, this level of participation on KMA's part would fall far short of the "substantial control" over packaging or labeling required to abrogate KMA's immunity from suit under Tenn. Code Ann. § 29–28–106(1). Because the Court relies on alternative grounds for granting KMA's motion for summary judgment, it will not similarly analyze Plaintiffs' allegations regarding the product

brochures, service bulletins, and owner's manual.

**9.** Defendant KMC notes that Plaintiffs' Amended Complaint "does not differentiate between the damages being sought by Plaintiff Trisha Grant individually versus Plaintiff Trisha Grant on behalf of her three minor children. (Doc 75 at 4 n.4). In her response, Plaintiff Grant characterizes her individual claims as claims for "medical expenses and loss of consortium." (Doc. 78 at 5).

to minors whose action must be brought within a period of one (1) year after attaining the age of majority, whichever occurs sooner.

Tenn. Code Ann. § 29–28–103(a). Tennessee courts have consistently classified this language as a statute of repose, as opposed to a statute of limitations. *See, e.g., Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 901 n.17 (Tenn. 2011). Unlike with a statute of limitations where the time within which legal proceedings must be commenced begins with the accrual of the cause of action, a statute of repose begins running on the date of a triggering event. Oftentimes the triggering event occurs before, and is entirely unrelated to the accrual of a cause of action. A statute of repose, therefore, can bar a plaintiff's cause of action before it even accrues. Accordingly, the Supreme Court of Tennessee has explained that statutes of repose "are substantive and extinguish both the right and the remedy, while statutes of limitation are merely procedural, extinguishing only the remedy." *Cronin v. Howe*, 906 S.W.2d 910, 913 (Tenn. 1995).

This case presents such a scenario. Under Tenn. Code Ann. § 29–28–103(a), the triggering event for the ten-year statute of repose is the "date on which the product was first purchased for use or consumption." *Wyatt v. A–Best Prods. Co.*, 924 S.W.2d 98, 102 (Tenn. Ct. App. 1995). Because it is undisputed that the Sportage was first sold on August 6, 2001, the statute of repose operates to extinguish both the right and remedy to any products liability causes of action filed after August 6, 2011. *See* Tenn. Code Ann. § 29–28–103(a). Here, the subject rollover accident did not occur until February 10, 2014. Moreover, the lawsuit was not filed until July 2, 2014, or nearly thirteen years after the Sportage was first purchased for use. Therefore, unless some exception to the statute of repose applies, Tenn. Code Ann. § 29–28–

103(a) mandates the dismissal of Plaintiff Grant's individual claims.

■ Plaintiff Grant claims that the "injury to minors" tolling provision of the statute of repose applies to her individual claims. This provision declares that all products liability causes of action must be brought within ten years from the date on which the product was first purchased, "except in the case of injury to minors whose action must be brought within a period of one (1) year after attaining the age of majority." Tenn. Code Ann. § 29–28–103(a). Plaintiff Grant's claim, however, relies on a misunderstanding of both "derivative claims" and of the "triggering event" of the statute of repose.

First, Plaintiff Grant argues that the "injury to minors" provision applies to her individual claims, notwithstanding the fact that she is undisputedly not a minor, because "[t]he parent's claim is a derivative claims [sic] that arises out of the child's product liability action." (Doc. 78 at 4). Plaintiff Grant relies entirely on the Supreme Court of Tennessee's opinion in *Dudley v. Phillips*, 218 Tenn. 648, 405 S.W.2d 468 (1966) for this argument. Therein, the court held that "a cause of action arising in favor of the parent resulting from a tort committed against the child is derivative in nature and such action is subject to the same defenses that are available in the action arising in favor of the child." *Id.* at 656, 405 S.W.2d 468. Plaintiff then correctly recognizes that, because of the derivative nature of the claims, a parent cannot recover if the child's independent action is barred. The converse, however, is not necessarily true. Plaintiff Grant has cited no authority, and the Court has found none, supporting the proposition that because a minor plaintiff's claims survive a statute of repose, so too must the parent's derivative claims.

Indeed, two lines of clearly established Tennessee case law dictate the opposite result. First, in *Dudley*, the Supreme Court of Tennessee held that

> [w]hen a tort is committed against a child there arises two separate and distinct causes of action ... The almost universally accepted theory is that, upon injury to a child, there immediately arises in favor of the parent a cause of action for loss of services, medical expenses to which he will be put, etc. *and that another and distinct cause of action arises in favor of the child for the elements of damage to him*, such as pain and suffering, disfigurement, etc.

*Dudley*, 405 S.W.2d at 469 (emphasis added); *See also* Tenn. Code Ann. § 20–1–105(a) ("The father and mother of a minor child have equal rights to maintain an action for the expenses and the actual loss of service resulting from an injury to a minor child in the parents' service or living in the family except that where one (1) parent is dead or has deserted the family, the other parent shall have the sole right to maintain the action.").

Second, the Supreme Court of Tennessee has long been reluctant to find implied exemptions to statutes of repose. In *Penley v. Honda Motor Co., Ltd.*, the court analyzed whether mental incompetency tolled the very statute of repose at issue in this litigation. Therein, the court noted that "[i]t is a well-established canon of statutory construction that the mention of one subject in a statute means the exclusion of other subjects that are not mentioned." 31 S.W.3d 181, 185 (Tenn. 2000) (internal quotation marks omitted). The court ultimately held that the statute of repose

> originally contained one express exception to the general ten-year limitations period, and the General Assembly has twice amended the statute since 1978 to include other express exceptions.

The failure of the General Assembly to expressly include any provision exempting persons of unsound mind from the statute of repose strongly indicates its desire not to have such an exemption. Accordingly, we will not rewrite this statute. to insert other categories not intended by the General Assembly. If the General Assembly intended for mental incapacity to toll the ten-year statute of repose, it could have easily done so while amending the statute to provide for other exceptions.

*Id.* at 185–86. Several years later, the same court, relying on *Penley*, reiterated this position with regards to tolling the medical malpractice statute of repose for minors. *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 516–17 (Tenn. 2005) ("The same analysis applies to the present case: we will not rewrite the medical malpractice statute of repose to include an exception for minors when it appears from the statutory language that the Legislature did not intend such an exception.").

█ In tandem, these lines of cases dictate that Plaintiff Grant's individual claims are not tolled for purposes of the ten-year statute of repose simply because her minor children's claims are tolled. Tennessee courts "presume that the Legislature knows the law and makes new laws accordingly." *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013). Because the *Dudley* decision was handed down in 1966, and the first version of the statute of repose at issue in this litigation went into effect in 1978, this Court presumes that the General Assembly was aware that "when a tort is committed against a child there arises two separate and distinct causes of action." *Dudley*, 405 S.W.2d at 469. Dispositively, however, the statute of repose is expressly tolled for minors' claims and is silent regarding their parents' derivative claims. *See* Tenn. Code Ann. § 29–28–103(a). Like the Supreme Court of Tennessee in *Penley*

and *Calaway*, this Court will not rewrite the products liability statute of repose to include a tolling provision for a parent's derivative claims where the General Assembly easily could have done so explicitly.

Plaintiff Grant's understanding of "triggering events" is similarly misguided. As noted *supra*, a statute of repose begins running on the date of a triggering event, which is oftentimes different than the date on which the cause of action accrues. Plaintiff Grant argues that

> [a]lthough the normal triggering event is the "date on which the product was first purchased for use or consumption," the triggering event is not the same for a minor. The triggering event for the statute of repose to apply to a minor's claims is "within a period of one (1) year after attaining the age of majority."

(Doc. 78 at 5) (quoting Tenn. Code Ann. § 29–28–103(a)). She goes on to argue that because the parent's claim is "dependent upon the right of the injured child to recover and thus derivative of the minor's claim, the 'triggering event' for the derivative claims must be the same as the 'triggering event' for the minor's claims." (*Id.*).

While Plaintiff Grant chastises Defendants for citing "no Tennessee case law to the contrary," (*id.*), she too has failed cite to any Tennessee case law to support her strained reading of Tenn. Code Ann. § 29–28–103(a). More troubling, however, is that Plaintiff Grant's interpretation of the statute of repose is unsupported by a plain reading of its text. The only triggering event articulated in the text of Tenn. Code Ann. § 29–28–103(a) is "the date on which the product was first purchased for use or consumption." The provision extending the statute of repose for minors does not establish a separate triggering event, but rather tolls the statute of repose until one

year after the minor has attained the age of majority, notwithstanding the fact that the triggering event has already happened. Finally, accepting Plaintiff Grant's reading of the statute would amount to the Court rewriting Tenn. Code Ann. § 29–28–103(a) to allow the derivative nature of a parent's claim to toll the products liability statute of repose. As discussed at-length *supra*, the Court is disinclined to engage in such legislation.

Because Plaintiff Grant's individual claims were filed more than ten years after the Sportage was first purchased for use, and because no exception to the statute of repose applies, Tenn. Code Ann. § 29–28–103(a) bars Plaintiff Grant's individual claims. Accordingly, Defendant KMC's motion for partial summary judgment as to those claims will be **GRANTED**.

### 2. Waiver Rule

In the alternative, Plaintiff Grant argues that even if her individual claims are barred by the statute of repose, she "can still recover medical expenses through the minor children's claims." (Doc. 78 at 5). Relying primarily on the Tennessee Court of Appeals decision in *Palanki ex rel. Palanki v. Vanderbilt Univ.*, 215 S.W.3d 380 (Tenn. Ct. App. 2006), Plaintiff Grant claims that Tennessee has adopted the "waiver rule" whereby a parent can recover a child's pre-majority medical expenses in a civil action brought on behalf of the minor child by and through the parent as next friend. Indeed, the *Palanki* court expressly recognized that in a previous case, the Tennessee Court of Appeals "adopted the waiver rule and held that 'a child under circumstances where the parent has acted as next friend may maintain an action for his medical expenses provided that [the parent] has paid for them . . . or is legally obligated to pay them."[10] *Id.* at

---

10. Here, it is undisputed that the children's parents are paying for the children's medical

expenses. The children themselves have neither paid for, nor are they legally obligated to

394 (quoting [11] *Smith v. King*, 1984 WL 586817 at *2 (Tenn. Ct. App. Sept. 21, 1984)). This "waiver rule" has been cited approvingly, albeit in dictum, by the Tennessee Court of Appeals as recently as 2015. *See Neale v. United Way of Greater Kingsport*, 2015 WL 4537119 at *7 (Tenn. Ct. App. July 28, 2015) ("Under the waiver rule, 'a child under the circumstances where the parent has acted as next friend may maintain an action for his medical expenses provided that [the parent] has paid for them ... or is legally obligated to pay them.' ") (quoting *Palanki*, 215 S.W.3d at 394)). The Tennessee Court of Appeals, therefore, would likely permit the minor Plaintiffs in this action to bring claims for their pre-majority medical expenses through their mother, Plaintiff Grant, as next friend.

■ This Court, sitting in diversity, must follow state law as announced by the Supreme Court of Tennessee. *See Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011). Where, as here, "a state appellate court has resolved an issue to which the high court has not spoken, we will normally treat [those] decisions ... as authoritative absent a *strong showing* that the state's highest court would decide the issue differently." *Kirk v. Hanes Corp. of North Carolina*, 16 F.3d 705, 707 (6th Cir. 1994) (emphasis in original) (internal quotation marks omitted); *see also Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir. 1989) ("Where a state's highest court has not spoken on a precise issue, a federal court may not disregard a decision of the state appellate court on point, unless it is convinced by other per-

suasive data that the highest court of the state would decide otherwise."). For the reasons stated *supra* Section IV.A.1 and those that follow, the Court is convinced that the Supreme Court of Tennessee would not apply the waiver rule as announced in *Palanki* to the case at bar.

The extraordinary nature of this finding warrants an in-depth discussion of the history and evolution of the so-called waiver rule, which finds its roots in *Smith v. King*, 1984 WL 586817 (Tenn. Ct. App. Sept. 21, 1984). Therein, Barbara Ellen Smith, a minor, filed a claim, by her parents as next friends, for personal injuries sustained during a school bus crash. Ultimately, the court concluded,

> [u]pon considering the foregoing cases and particularly *Wolfe*, we are persuaded that Tennessee has adopted the waiver rule and that a child under circumstances where the parent has acted as next friend may maintain an action for his medical expenses provided that he has paid them, as suggested in *Burke*, or is legally obligated to pay them.[12]

*Id.* at *2. The above-quoted sentence suffers from a distinct lack of intra-sentence punctuation and an overreliance on pronouns; at first blush, therefore, it is unclear whether the *Smith* court intended for the waiver rule to apply to situations in which the *parent* has paid for or is legally obligated to pay medical expenses, or if the court meant that the *child* must have paid for or be legally obligated to pay such expenses. The *Palanki* court resolved this ambiguity in favor of the former, quoting the *Smith* opinion as follows: "a child un-

pay such expenses. (*See* Doc. 81-1 at 2; Doc. 81-2 at 3).

**11.** As will be made clear, *infra*, the *Palanki* opinion misinterpreted this portion of the *Smith* opinion.

**12.** This holding is supplemented in a footnote, which reads "[a]n unemancipated child living

at home and being supported by his parent is not necessarily liable for necessaries furnished him. *Gardner v. Flowers*, 529 S.W.2d 708 (Tenn. 1975); *Foster v. Adcock*, 161 Tenn. 217, 30 S.W.2d 239 (1930)." *Smith* 1984 WL 586817 at *2 n.4.

der circumstances where the parent has acted as next friend may maintain an action for his medical expenses provided that [the parent] has paid for them ... or is legally obligated to pay them." *Palanki*, 215 S.W.3d at 394 (quoting *Smith*, 1984 WL 586817 at *2). As Defendant KMC identifies, however, a more thorough analysis of *Smith* and the cases cited therein reveals that the *Palanki* court should have inserted "the child" into the brackets instead of "the parent."

The *Smith* opinion first singles out *Wolfe v. Vaughn*, 177 Tenn. 678, 152 S.W.2d 631 (1941), as "particularly" instructive. In *Wolfe*, Effie Vaughn, a six-year-old, was struck and seriously injured by an automobile. She brought suit, by and through her grand uncle as next friend, and a jury awarded her $5,000 for the injuries she sustained and an additional $2,000 for medical expenses. Defendant's primary argument on appeal was that plaintiff should not have been awarded the $2,000 for medical expenses because "the law confers no cause of action upon an infant for such expenses." *Id.* at 633. The *Wolfe* court did not contest this legal argument, noting that a tort committed against a minor "gives rise to two causes of action, one on behalf of the child for pain and suffering, his permanent injury, and impairment of earning capacity after attaining majority, the other on behalf of the parent for loss of services during minority, and expenses of treatment." *Id.* The court, however, recognized that Effie's mother was dead, and that her father was "a non compos." *Id.* "It thus appear[ed] that she [had] no mother and her father [was] civilly dead; so that unless she could sue for these necessary expenses there was no one who could do so, and certainly the defendants were liable to some one [sic] therefor." *Id.* This led the court to allow the minor to recover her pre-majority medical expenses. *Id.* at 634. ("Upon principle we think that in a case of this character where a child has no parent who can sue for such expenses that she can sue for and recover the same."). Accordingly, the *Wolfe* court clearly addressed a situation in which the parents neither paid for nor were legally responsible for the child's medical expenses.

Next, the *Smith* court's proviso "provided that he has paid them," references *Burke v. Ellis*, 105 Tenn. 702, 58 S.W. 855 (1900). In *Burke*, the Supreme Court of Tennessee held that the trial court erred where, in an action brought by a minor through his next friend, the trial judge instructed the jury that medical expenses incurred by the father for the minor's care could form part of the damage award. The Court elaborated as follows:

It will be seen that the trial judge gives the following elements as entering into the estimate of damages: (1) Sufferings; (2) loss of time; (3) medical expenses incurred; (4) permanent injuries. It is not alleged or shown that the boy incurred any expenses for medical services. It is alleged these were incurred by the father. Such an element was not proper in estimating the damages in a case brought like this, by next friend, for the minor; and, while there is no proof that the child paid any expenses for medical treatment, there is a statement that such expenses were incurred and paid by the father, and the charge was calculated to lead the jury to believe or infer that these expenses incurred and paid by the father might be taken into the estimate in fixing the damages. This was error ... Whether the jury, in finding a round amount of damages, gave any part of it for medical attention and loss of time, we cannot know, but they were warranted by the charge in doing so. This was error.

*Id.* at 857 (emphasis added). Thus, *Burke* unmistakably stands for the proposition

that it is improper for a jury to consider medical expenses as relevant to damages where, as here, a minor brings claims by next friend. Moreover, by explicitly mentioning twice that there is no proof that the child paid any expenses for medical treatment, the court implies that the outcome may be different if such proof were presented. Accordingly, where the *Smith* court says that the waiver rule applies to permit a child to recover medical expenses "provided that he has paid them, as suggested in *Burke*," *Smith*, 1984 WL 586817 at *2, it is clear that the "he" to which the *Smith* court referred was intended to be "the child."

The *Smith* court further concluded that the waiver rule applies in a child's cause of action, brought by and through next friend, "provided that he ... is legally obligated to pay them." *Id.* In a footnote supporting this proviso, the court explains that "[a]n unemancipated child living at home and being supported by his parent is not necessarily liable for necessaries furnished him," and cites to *Gardner v. Flowers*, 529 S.W.2d 708 (Tenn. 1975) and *Foster v. Adcock*, 161 Tenn. 217, 30 S.W.2d 239 (1930). *Smith*, 1984 WL 586817 at *2 n.4. Both *Gardner* and *Foster* analyze whether a *child* is legally obligated to pay a debt. *Gardner*, 529 S.W.2d at 711 ("We agree with what appears to be the majority rule and hold that the inability of parents to pay for essential medical treatment for an infant renders such treatment a necessary *for which the infant is liable*.") (emphasis added); *Foster*, 30 S.W.2d at 240 ("We are of [the] opinion that the obligation here was that of the parent, not that of the child ... The acceptance by the father of the physician's services to this infant, and his subsequent recognition of obligation therefor, by partial payment, coupled with the legal duty resting on the father to provide such necessary services, are circumstances sufficient to support a finding of a contractual obligation on the

part of the father. *It being the father's debt, the child may not be held thereon*.") (emphasis added) (citations omitted). The discussion of a child's legal obligations in these cases lends further support to the proposition that the "he" in the *Smith* opinion was intended to mean "the child."

Finally, the remand order in *Smith* itself counsels that the waiver rule is to be applied only where the child, and not the parent, paid the medical expenses or was legally obligated to pay them. Immediately after announcing the substance of the waiver rule, the court explained

[i]n the case at bar it is not clear from the record whether the child could bring herself within the exception to the general rule above declared. At the hearing on the motion *in limine* it appears that the doctor's deposition which showed that the father was billed for the treatment was the only evidence introduced. A subsequent motion to reconsider was overruled. While in the ordinary case it is incumbent upon a plaintiff to present such proof to sustain his position at the time the motion was heard, because we are dealing with a minor we believe it in order that the case be remanded for the child to introduce such proof as she may to enable her to recover on the basis of the rule herein enunciated.

*Smith*, 1984 WL 586817 at *2. It is clear from this language that the court remanded the case so that the minor plaintiff could present evidence that she, the child, had paid the medical expenses or was legally obligated to pay same. Had the *Smith* court intended to announce a waiver rule in which a child's claim could proceed if *the parent* had paid the medical expenses or was legally obligated to pay same, it would have had no occasion to remand the case for additional proof since the trial court had already heard evidence that the father was billed for the medical treatment. For all of these reasons, the

Court is convinced that the *Palanki* court misinterpreted the *Smith* court and erroneously extended the waiver rule to a situation in which the parent, and not the child, had paid for or was legally responsible to pay medical expenses.

While the waiver rule as announced in *Smith* was not originally intended to reach situations in which the parent has paid medical expenses, this alone would not be sufficient grounds for this Court to disregard the Tennessee Court of Appeal's decision in *Palanki*. Taken in conjunction with the above, however, three additional points leave this Court convinced that the Supreme Court of Tennessee would not apply *Palanki*'s enlarged waiver rule to the present situation.

First, the overarching intent of the waiver rule is not to allow a parent to assert his/her claims through his/her child to revive the parent's statutorily barred claims. Instead, as correctly recognized in *Palanki*, its intent was to prevent the possibility of double recovery. *See Palanki*, 215 S.W.3d at 394 ("The court reasoned that pursuant to the waiver rule, 'the parent by bringing suit on behalf of the minor has waived any claim that he might have' thereby eliminating the concern of double recoveries for pre-majority medical expenses.") (quoting *Smith*, 1984 WL 586817 at *2). Here, double recovery is not a concern because, as articulated *supra* Section IV.A.1, Plaintiff Grant's individual

claim for medical expenses is barred by the products liability statute of repose. Tenn. Code Ann. § 29–28–103(a). Second, and relatedly, Plaintiff Grant has not waived her claims in this action. Instead, she appears to have asserted her claim for medical expenses individually from the onset of this litigation. Only when the specter of her claims being time-barred arose did Plaintiff Grant raise the issue of the waiver rule. Finally, and most importantly, the arguments articulated *supra* Section IV. A.1 apply in full force to the extension of the waiver rule to the facts presented in the case at bar. If the Supreme Court of Tennessee were to accept the *Palanki* version of the waiver rule in situations like this, that application would effectively allow a parent to collect as damages his/her child's pre-majority medical expenses notwithstanding the fact that the parent's individual claims are barred by Tenn. Code Ann. § 29–28–103(a). This would not only blur the well-established line between a parent's claims and a child's claims in a tort action, *see Dudley*, 405 S.W.2d at 469, but it would also allow parents to engage in artful pleading to execute an end-run on the statute of repose. Because the Supreme Court of Tennessee has been so reluctant to rewrite statutes of repose, *see supra* Section IV.A.1, this Court cannot find that said court, if squarely presented with the question,[13] would condone such a result.

---

**13.** While neither party cited thereto, the Court would be remiss to ignore that the Supreme Court of Tennessee has been presented with a similar, but not directly relevant, issue in the context of the medical malpractice statute of repose. *See Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509 (Tenn. 2005). While not squarely presented with the issue of the waiver rule, the *Calaway* Court was asked to consider the following, which was the first of four certified questions: "Does a minor child have a personal claim for medical expenses arising from an injury caused by the fault of another when the claim of the

child's parent for such medical expenses is barred by a statute of limitation or repose?" *Id.* at 513. The court issued conflicting answers. Near the beginning of the opinion, the court held that the medical malpractice statute of repose was tolled for minors for cases commenced on or before December 9, 2005, but that the statute of repose was not tolled in such cases filed after December 9, 2005. Moving to the other certified questions, the court held

> our answer to the first question is that for cases commenced on or before December 9, 2005, a minor child's personal claims for

Because the Court is convinced that the Supreme Court of Tennessee would not apply the waiver rule as erroneously extended in *Palanki* (and perpetuated in *Neale*) to the present case, Plaintiff Grant's alternative argument is without merit. Accordingly, in addition to Plaintiff Grant's individual claims being barred by the statute of repose, Plaintiffs cannot recover the children's pre-majority medical expenses through the children's claims.

### B. Punitive Damages

Plaintiffs contend that Defendants' conduct with regards to the Sportage's door latch system, seatbelts and handling/stability warrants the imposition of punitive damages. Defendant KMC, however, argues that Tenn. Code Ann. § 29–39–104(e) bars punitive damages in this action. In the alternative, KMC argues that Plaintiffs have failed to set forth sufficient evidence

that KMC's conduct warrants punitive damages.

In 2011, the Tennessee General Assembly passed several tort reform measures. One such measure, effective for causes of action accruing after October 1, 2011, provides that

> [p]unitive damages shall not be awarded in any civil action when a defendant demonstrates by a preponderance of the evidence that it was in substantial compliance with applicable federal and state regulations setting forth specific standards applicable to the activity in question and intended to protect a class of persons or entities that includes the plaintiff, if those regulations were in effect at the time the activity occurred.

Tenn. Code Ann. § 29–39–104(e). Here, Defendant KMC claims that all of the activities in question in this litigation implicate the Federal Motor Vehicle Safety

medical expenses arising from a medical malpractice injury are not barred by the statute of repose; for cases commenced after December 9, 2005, a minor child's personal claims for medical expenses arising from a medical malpractice injury are barred by the statute of repose.

*Id.* at 514. Seemingly, therefore, it would appear that whether a child has a personal claim for medical expenses, notwithstanding the fact that his/her parent's claim is time-barred, would depend on whether the *child's* claim was time-barred. In the conclusion, however, the Supreme Court of Tennessee answers the certified question with a *categorical* "no." *Id.* at 519. Unfortunately, the court's answer to this certified question was unaccompanied by substantive analysis. Instead, the court opted to extensively analyze the third and fourth certified questions, which apparently dictated the answers to the first two. Perhaps noting the lack of discussion and conflicting answers to the first certified question, appellants petitioned the court to elaborate on its answers to certified questions one and two. The court denied this request. *Calaway ex rel. Calaway v. Schucker*, No. M2004–02856–SC–R23–CQ (Tenn. Feb. 21, 2006) (William M. Barker, C.J.) ("The petition

to rehear is denied to the extent that it seeks further discussion of certified questions one and two.").

Through its independent research, this Court has uncovered only one court that has even addressed this issue in the *Calaway* opinion. Although it did not explicitly identify that any ambiguity existed, the United States District Court for the Western District of Tennessee interpreted the Tennessee Supreme Court's answer to the first certified question as a categorical answer of "no." *See Calaway ex rel. Calaway v. Schucker*, No. 2:02–cv–02715, Case Filing No. 73 at 2 (W.D. Tenn. Mar. 7, 2006) ("In regard to the first question, the [Tennessee Supreme Court] held that a minor does not have a personal claim for medical expenses when the claim of the minor's parent is time barred."). While the Court is inclined to agree with the Western District of Tennessee's view, it need not decide the issue. Because the Supreme Court of Tennessee did not clarify its conflicting and conclusory statements, and because the "waiver rule" was not explicitly before that court, the *Calaway* opinion is at best a neutral data point that cannot overcome the strong evidence that the Supreme Court of Tennessee would not extend the waiver rule to the case at bar.

Standards ("FMVSS"). Specifically, KMC argues that Plaintiffs' door latch claims are governed by FMVSS No. 206. At the relevant time, this standard, entitled "Door locks and door retention components" provided that "[t]his standard specifies requirements for door locks and door retention components including latches, hinges, and other supporting means, to minimize the likelihood of occupants being thrown from the vehicle as a result of impact." 49 C.F.R. § 571.206(S1) (2000).[14] KMC has offered uncontroverted testimony from one of its Senior Research Engineers that the 2001 Sportage door latch system met *and exceeded* the standards set forth in FMVSS 206. (Doc. 74-5 at 2).

KMC further argues that Plaintiffs' allegations relating to the Sportage's seatbelt system and crashworthiness implicate FMVSS 208, 209, and 210. These standards are entitled "occupant crash protection," "seat belt assemblies," and "seat belt assembly anchorages," respectively, and provide that:

- "This standard specifies performance requirements for the protection of vehicle occupants in crashes. The purpose of this standard is to reduce the number of deaths of vehicle occupants, and the severity of injuries, by specifying vehicle crashworthiness requirements in terms of forces and accelerations measured on anthropomorphic dummies in test crashes, and by specifying equipment requirements for active and passive restraint systems." 49 C.F.R. § 571.208(S1–S2) (2000);

- "This standard specifies requirements for seat belt assemblies." 49 C.F.R. § 571.209(S1) (2000); and

- "This standard establishes requirements for seat belt assembly anchorages to insure their proper location for effective occupant restraint and to reduce the likelihood of their failure." 49 C.F.R. § 571.210(S1) (2000).

KMC offers uncontroverted testimony from a different Senior Research Engineer that the 2001 Sportage met and exceeded the requirements of FMVSS 208, 209, and 210. (Doc. 74-6 at 2). Moreover, Plaintiffs have failed to identify any other FMVSS that apply to their claims.

Again, state law bars punitive damages where defendant "was in substantial compliance with applicable federal and state regulations setting forth specific standards applicable to the activity in question and intended to protect a class of persons or entities that includes the plaintiff, if those regulations were in effect at the time the activity occurred." Tenn. Code Ann. § 29–39–104(e) Plaintiffs do not contest that the Sportage was in compliance with the above-cited FMVSS in effect at the time it was sold, or that Plaintiffs are the class of persons the FMVSS are intended to protect. Plaintiffs' sole argument against summary judgment is that FMVSS 206, 208, 209, and 210 are not "specific standards applicable to the activity in question," because they do not address "the defects and alternative designs involved in this case." (Doc. 78 at 10). Specifically, Plaintiffs maintain that FMVSS 206 does not address countermeasures, such as automatic door locks, that would have prevented the door from opening during the crash. Furthermore, Plaintiffs claim that FMVSS 208, 209, and 210 "do not address whether or not a manufacturer can incorporate a

---

14. While Defendant KMC cites the 2001 version of the C.F.R., the Court notes that the 2001 version was not in effect until October of 2001. Accordingly, the Court cites to the 2000 version, which was in effect on August 6, 2001, the day on which KMC sold the Sportage to The Kia Store. Because Plaintiffs do not contest Defendant KMC's compliance with the applicable FMVSS, however, the distinction is immaterial.

'rip stitch' load limiter into a belt system versus other alternative load limiters, or no load limiter at all," and do not prohibit or mandate "other alternative belt systems," or "the inclusion of slack eliminating devices such as a belt pretensioner." (*Id.* at 11).

Since its enactment in 2011, no court has interpreted the phrase "specific standards applicable to the activity in question" found in Tenn. Code Ann. § 29–39–104(e).[15] When engaging in statutory interpretation, Tennessee courts' primary role is to "implement the legislature's intent." *In re Angela E.*, 303 S.W.3d 240, 246 (Tenn. 2010). "Whenever possible, [courts] determine legislative intent from the natural, ordinary meaning of the statutory language, and, when the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use." *Id.* (internal quotation marks and citations omitted).

Applying these directives to this case, it is clear that Plaintiffs' interpretation of Tenn. Code Ann. § 29–39–104(e) fails as a matter of law. Based on a plain reading of the text, the unmistakable intent of the legislature was to bar punitive damages where a defendant relies on and is in compliance with standards set by applicable federal and state regulations. The term "standard" is defined as "a model accepted as correct by custom, consent, or authority." Black's Law Dictionary (10th ed. 2014). Standards, therefore, set a *baseline* of quality deemed acceptable by some authoritative body. This basic con-

cept is reflected in the definitions section of the NTMVSA.[16] *See* 49 U.S.C. § 30102(9) (" '[M]otor vehicle safety standard' means a *minimum standard* for motor vehicle or motor vehicle equipment performance.") (emphasis added).

As quoted above, the stated purposes of FMVSS 206, 208, 209, and 210 were to "specify requirements" for door latches, crashworthiness, and restraint systems. It is uncontested that the Sportage complied with these requirements. Plaintiffs' sole argument is that the applicable FMVSS are not "specific standards" because they do not address countermeasures or other alternative systems. (Doc. 78 at 10–11). Countermeasures or alternative systems, however, are beyond the scope of "standards" as the term is understood in ordinary use. Moreover, accepting Plaintiffs' interpretation of "specific standards" would eviscerate the bar on punitive damages established in Tenn. Code Ann. § 29–39–104(e) in all motor vehicle products liability cases. Because the FMVSS, by definition, only discuss *minimum* standards, *see* 49 U.S.C. § 30102(9), all one would have to do to evade the statutory bar on punitive damages, under Plaintiffs' reading, is suggest some alternative design not addressed in the FMVSS that could have prevented the injury.[17] Because the Court cannot conclude that the Tennessee General Assembly intended such a result, and because Plaintiffs' interpretation of Tenn. Code Ann. § 29–39–104(e) is contrary to a plain reading of the statutory text, Plaintiffs' argument is without merit. It is

15. Moreover, the Court's independent research did not uncover any opinions, published or unpublished, state or federal, analyzing Tenn. Code § 29–39–104(e) in detail.

16. The NTMVSA mandates the creation of the FMVSS. *See* 49 U.S.C. § 30111.

17. Indeed, there is no reason to apply this logic only to motor vehicle products liability

cases. Plaintiffs' reading of Tenn. Code Ann. § 29–39–104(e) would require all federal and state regulatory standards to offer a comprehensive discussion of every possible counter measure to every known problem in order for a defendant to successfully claim immunity from punitive damages. Such regulatory standards would be unwieldy and do not exist in practice.

therefore beyond question that the stated purposes of FMVSS 206, 208, 209, and 210 are "specific standards applicable to the activity in question." Tenn. Code Ann. § 29–39–104(e).

Finally, it is worth noting that Plaintiffs' reliance on *Frausto v. Cooper Tire and Rubber Co.*, 2014 WL 581724 (M.D. Tenn. Feb. 13, 2014), is misplaced. The *Frausto* opinion did, in fact, cite to Tenn. Code Ann. § 29–39–104(e), and ultimately concluded that granting summary judgment as to a punitive damages claim would be inappropriate. *Id.* at *3–4. Plaintiffs err, however, in two regards. First, the *Frausto* opinion never discusses whether the defendant complied with federal regulations. Second, the *Frausto* cause of action arose in July of 2011. Because Tenn. Code Ann. § 29–39–104(e) is only applicable to causes of action arising after October 1, 2011, the *Frausto* court had no occasion to address compliance with federal regulations or the statutory bar on punitive damages. For this same reason, Plaintiffs' reliance on *Aguirre v. Mitsubishi Motors North America, Inc.*, 2012 WL 4977065 (M.D. Tenn. Oct. 17, 2012) and *Flax v. Daimler-Chrysler Corp.*, 272 S.W.3d 521 (Tenn. 2008) is also misplaced. Plaintiffs correctly identify that the Supreme Court of Tennessee in *Flax* declared that "evidence of compliance with government regulations . . . is not dispositive. To hold otherwise would create an overly inflexible rule that would allow some manufacturers knowingly engaged in reprehensible conduct to escape the imposition of punitive damages." 272 S.W.3d at 536. The Tennessee General Assembly, however, has superseded this holding by adopting the bright line rule in Tenn. Code Ann. § 29–39–104(e).

Because no reasonable jury could conclude that FMVSS 206, 208, 209, and 210 are not "specific standards applicable to the activity in question," this case falls squarely within Tennessee's statutory ban of punitive damages as codified in Tenn. Code Ann. § 29–39–104(e). Accordingly, Defendant KMC's motion for partial summary judgment as to Plaintiffs' claim for punitive damages will be **GRANTED.**

**C. Door Latch Claims**

 Next, KMC argues that it is entitled to partial summary judgment on all claims relating to the alleged door latch defects that caused the driver door of the Sportage to open during the rollover accident. To establish liability, Plaintiffs "must show that the product manufactured and sold by the defendant proximately caused the injuries [they] allege[ ] to have sustained." *Richardson v. GlaxoSmithKline*, 412 F.Supp.2d 863, 868 (W.D. Tenn. 2006) (applying Tennessee law). Moreover, "[w]here . . . two or more possible causes for an injury are identified, the plaintiff must establish with reasonable certainty that his injury resulted from a cause *for which the defendant would be liable.*" *Id.* at 871 (emphasis added) (internal quotation marks omitted).

It is undisputed that the driver's door of the Sportage unlatched and opened at some point during the rollover accident. KMC, however, claims that the expert opinion of Andrew N. Gilberg, Plaintiffs' only evidence regarding causation, is insufficient as a matter of law to establish same. Specifically, KMC points to Gilberg's expert report, in which he opines that "the unwanted door opening occurred as a result of inertial activation of the latch or outside handle linkage activation or some combination of both." (Doc. 74-8 at 2). KMC further explains that the "outside handle linkage activation" identified by Gilberg would have been caused by ground contact during the rollover.[18] In his deposi-

---

18. Gilberg admits that the "ground contact" necessary to open the door would have in-

volved the driver's door handle scooping up earth during the rollover. (Doc. 74-7 at 2).

tion, Gilberg admitted that there are equal probabilities that the door was opened by inertial activation of the latch or outside handle linkage activation. (Doc. 74-7 at 2). Because a car door is supposed to open when the handle is lifted up, and because even Plaintiffs' expert cannot identify with a reasonable degree of certainty that it was inertial activation and not outside handle linkage that caused the driver's door to open, KMC claims that Plaintiffs have not established causation.

Plaintiffs, however, have presented Gilberg's expert report, in which he opines that both inertial activation and outside handle linkage activation are defects. (Doc. 80-2 at 25) ("The driver's door of the Grant KIA Sportage accident vehicle most probably opened due to outside handle linkage activation or inertia activation of the latch or locking system in combination with outside handle activation. *The failure must be considered a defect* because neither the latch, striker nor hinges were overpowered or otherwise significantly damaged by the accident."). Gilberg reiterated this position at his deposition. (Doc. 80-10 at 5) ("Q: Okay. Even if the handle is scooped and lifted by ground contact, that would be a defect? A: Yes."). Because Plaintiffs have presented expert testimony that either cause of the door opening would be considered a defect, the Court cannot conclude that Plaintiffs have failed to set forth sufficient evidence regarding causation.

 Even if the Court were inclined to accept KMC's contention that the outside handle linkage at issue here is not a defect,[19] Plaintiffs have presented considerable evidence that the design of the door was unreasonably dangerous. *See Tatham v. Bridgestone Americas Holding, Inc.*, 473 S.W.3d 734, 751 (Tenn. 2015) ("Causation is an essential element of the Plain-

tiff's claim, whether establishing that the product was defective <u>or</u> unreasonably dangerous.") (emphasis added). Specifically, Plaintiffs' expert has identified several design alternatives that would have prevented such outside handle linkage, including automatic locks, a cable-linkage handle system, length adjusting linkages, integrated handle and latch designs, and electronic latching systems. (*See* Doc. 80-2 at 23–24). Furthermore, Plaintiff has shown that this crash was not an isolated incident by identifying previous lawsuits regarding same, (Doc. 80-1 at 4), that "[u]nwanted triggering of the latch through activation of its outside handle rod has been well known within the industry for decades," (Doc. 80-2 at 20–23), and that KMC did, in fact, offer automatic locks in some of its 2001 models sold in the Korean market. (Doc. 80-3 at 3–4). KMC, to its credit, has presented evidence that in 2001 fewer than half of all passenger vehicles had automatic locks. (Doc. 81-3 at 4). To find in KMC's favor, however, the Court would need to weigh the evidence, which is forbidden at the summary judgment stage. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Because Plaintiff has presented sufficient evidence such that a jury could reasonably find that the failure to use automatic locks, for example, rendered the door latch system unreasonably dangerous, the Court's inquiry is at an end.

Plaintiffs have presented sufficient probative evidence supporting their claim that *either* cause of the door opening is "a cause for which [KMC] would be liable." *Richardson*, 412 F.Supp.2d at 871. Accordingly, KMC's claim that Plaintiffs have failed to establish causation lacks merit, and its motion for partial summary judg-

---

19. At this stage, the Court must view all evidence in a light most favorable to Plaintiffs. Accordingly, the Court is not so inclined.

ment relating to the driver's door latch system will be **DENIED**.

### D. Hudson Knost's Post-Crash Psychological Conditions

Finally, it is undisputed that Hudson Knost ("Hudson") suffered a traumatic brain injury ("TBI") as a result of the crash. KMC, however, claims that Plaintiffs have failed to establish causation with regards to any alleged psychological conditions suffered by Hudson. Specifically, KMC argues that the expert opinion of Dr. Thomas G. Burns, Psy. D., fails to take into account Hudson's entire medical history,[20] and is accordingly is insufficient to establish causation with respect to Hudson's post-crash conditions/diagnoses of: (1) depression, (2) anxiety, (3) problems sleeping, (4) memory problems, and (5) attention deficit hyperactivity disorder ("ADHD") / impulsive behavior.[21] (Doc. 75 at 19). Because Plaintiffs' expert has failed to show that the crash, and not Hudson's prior conditions, was a "substantial" or "predominate" cause of the above psychological conditions, KMC claims that Plaintiffs have not established that these injuries are a result of the crash.

▇▇▇▇ In light of these allegations, Plaintiffs obtained a supplemental report from Dr. Burns in which he analyzed more of Hudson's medical records. (*See* Doc. 80-11). Defendant KMC argues that because the supplemental report does not show that any of Hudson's previous psychological issues "conclusively resolved prior to the crash," Plaintiffs have failed to show that Hudson's post-crash psychological issues are legally attributable to the crash itself. (Doc. 81 at 11). KMC, however, cites

no authority for such a proposition. In fact, under Tennessee law,

> [a] defendant is not liable for damages from an earlier condition or injury, not having caused those damages, *except to the extent of aggravation or enhancement by the defendant's acts.* Where possible, the factfinder must apportion the amount of disability and pain between that caused by the pre-existing condition and that caused by the accident. *A plaintiff can recover for an increase in disability resulting from an accident,* but not for [his] total disability resulting from the pre-existing condition plus the aggravation caused by the accident.

*McMurry v. Metro. Gov't of Nashville,* 2003 WL 535918 at \*7 (Tenn. Ct. App. Feb. 26, 2003) (emphasis added) (citing *Haws v. Bullock,* 592 S.W.2d 588 (Tenn. Ct. App. 1979) and *Kincaid v. Lyerla,* 680 S.W.2d 471 (Tenn. Ct. App. 1984)). Accordingly, Dr. Burns' supplemental report need not show that Hudson's pre-existing psychological issues and behavior had "conclusively resolved" before the crash in order for Plaintiffs to collect damages.

▇▇▇▇ An exhaustive analysis of Dr. Burns' supplemental report is unnecessary. Ultimately, he concludes,

> [i]f asked, I would agree that Hudson's previous diagnosis of AD/HD, anxiety, sleep issues, depression and behavioral maladjustment were present prior to the accident ... However, a severe brain injury such as the one Hudson sustained can have a marked impact on a patient's ability to deal with stressors that were already present. With regard to memo-

---

**20.** Because it would be unduly invasive and would not appreciably enhance the analysis of KMC's motion, the Court will not at this time engage in a detailed discussion of Hudson's medical history.

**21.** Dr. Burns also diagnosed Hudson with partial hearing loss and loss of fine motor dexterity, which he opined were a direct result of Hudson's TBI. KMC is not disputing these diagnoses in the instant Motion. (Doc. 75 at 19 n.8).

ry, hearing and fine motor processing speed deficits, these have remained in the differential diagnostic category of neurocognitive problems that have surfaced as a result of the brain injury. It is likely that many of the psychiatric issues have been influenced by the injury as well; however, I would not argue that the motor vehicle accident was a sole factor in causing this given the extent of behavioral struggles Hudson experienced in the years prior to the motor vehicle accident.

(Doc. 80-11 at 6). Plaintiffs, therefore, have presented sufficient expert evidence that could lead a jury to reasonably find that Hudson's pre-existing conditions were exacerbated by the crash. Contrary to KMC's contentions, Tennessee law permits an award of damages for the aggravation of a pre-existing injury, and if possible, such an award must be apportioned between the damage caused by the pre-existing injury, and that caused by the defendant's conduct. *McMurry*, 2003 WL 535918 at *6–7. Because such an apportionment of damages is a quintessential question of fact for the jury, summary judgment is inappropriate. Accordingly, KMC's motion for partial summary judgment as to Hudson's post-crash psychological conditions will be **DENIED**.

## V. CONCLUSION

The Court recognizes that some of the results reached herein are quite counterintuitive. On one hand, the Court holds that genuinely disputed issues of material fact preclude summary judgment as to liability. On the other, the Court holds that neither Plaintiff Grant individually nor her children may recoup the pre-majority medical expenses incurred as a result of the accident. This seeming anomaly is due solely to the unyielding nature of statutes of repose. *See, e.g., Cronin*, 906 S.W.2d at 913 ("[Statutes of repose] can, in fact, bar a cause of action before it has accrued.").

Like the Supreme Court of Tennessee, however, this Court finds that "it is not the role of this Court to rewrite the statute [of repose] in order to remedy any perceived unfairness." *Calaway*, 193 S.W.3d at 517 n.2.

For the reasons stated herein, Defendant KMA's Motion for Summary Judgment (Doc. 76) is hereby **GRANTED**. Plaintiffs' claims against Defendant KMA are accordingly **DISMISSED WITH PREJUDICE**. Furthermore, Defendant KMC's Motion for Partial Summary Judgment (Doc. 74) is hereby **GRANTED in part** and **DENIED in part**, as set forth at length in this Order.

Plaintiffs' remaining claims against Defendant KMC shall continue to trial.

**SO ORDERED** this 10th day of May, 2016.